J-A12020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRIAN S. BAIRD AND LAURA BAIRD, HUSBAND AND WIFE | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| Appellants | : |
| | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| | : No. 1251 WDA 2016 |
| PATRICK SMILEY, JR. T/D/B/A TRI-COUNTY BUILDERS, A/D/B/A TRI-COUNTY GARAGE DOORS, AND FAIRMAN'S ROOF & FLOOR TRUSSES, INC. A/D/B/A FAIRMAN'S ROOF TRUSSES, INC. | : : : : : : |

Appeal from the Order Entered July 26, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s):  2012-2746

BEFORE:  OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                              **FILED JULY 19, 2017**

Appellants, Brian and Laura Baird, appeal from the order entered July 26, 2016, denying their motion to remove the entry of nonsuit as to Appellee Patrick Smiley, Jr. t/d/b/a Tri-County Builders, a/d/b/a Tri-County Garage Doors, following a jury trial that resulted in a $501,107.41 verdict in Appellants' favor against Fairman's Roof & Floor Trusses, Inc. a/d/b/a Fairman's Roof Trusses, Inc.[1]  We affirm.

_____

[1] "Where a court has entered a judgment of compulsory nonsuit, the appeal lies not from the entry of the judgment itself, but rather from the court's refusal to remove it." **Vicari v. Spiegel**, 936 A.2d 503, 508 n.5 (Pa. Super. 2007) (citation omitted).

The relevant facts and procedural history are as follows. Roger Grow entered into a contract with Appellee Patrick Smiley, Jr. of Tri-County Builders ("Smiley") to act as general contractor for the construction of a large pole building on Grow's property ("the Grow job"). Smiley hired Chris Fisher of Chris Fisher Construction as the primary subcontractor to supply labor and supervise the building of the structure. Fisher hired Appellant Brian Baird to work as a laborer/carpenter. Smiley introduced Fisher to Grow as the primary builder. Notes of Testimony (N.T.), Smiley, 6/29/2016, at 3-9 ("N.T. Smiley").

Fisher began work in October 2011. *See* N.T., Fisher, 6/27/2016, at 9 ("N.T. Fisher"). Smiley did not frequent the jobsite or retain any right of supervision. *See* N.T. Smiley at 9-14. Fisher told Smiley when he was ready for certain materials, and Smiley would order them. *See* N.T. Fisher at 8; *see also* N.T. Smiley at 14-15.

Smiley ordered the trusses for the roof from Appellee Fairman's Roof Trusses ("Fairman's"). Smiley provided specifications for the design to Fairman's, including the length, pitch (slope), and spacing between each truss. *See* N.T., Fairman, 6/28/2016, at 10-11 ("N.T. Fairman"). A Fairman's employee sketched a design, which Smiley subsequently approved. *See id.* at 12. Thereafter, Fairman's manufactured the forty-one, eighty-foot long trusses according to Smiley's specifications; each truss weighing approximately eight-hundred pounds. *See id.* at 5, 9-10. In addition, Fairman's informed Smiley in writing that an engineering

- 2 -

professional should design a bracing plan as well as be on site for the installation.  *Id.* at 12-13.

The laborers and carpenters used Fisher's equipment and structure bracing components to build the pole structure.  *See* N.T. Fisher at 12. Fisher and another laborer set the posts on the side of the building, and, using a machine, they built the sidewalls, placed 2-by-4's around the outside, and fastened sheet metal for the outside of the building to form the exterior structure.  *Id.* at 17-18.  Fisher called Smiley to extend the date of delivery of the trusses due to rain, which Smiley did.  *Id.* at 11.  Smiley arranged for the trusses to be delivered by Fairman's around November 17, 2011.  *Id.* at 19, 21.

On delivery day, Mr. Fairman arrived carrying the delivery in a flatbed truck; however, one side of the trusses hung off the truck causing all of the trusses to bow (bend).  *Id.* at 35.  After installing the first two or three sets of trusses, Fisher called Smiley.  Fisher informed Smiley that his team was having a hard time installing the trusses because they were bowed. *Id.* at 36-37.  Smiley told Fisher to do his best to get the trusses up.  *Id.*

The bows in the trusses made them difficult to brace as the building progressed and this threw off Fisher's measurements.  *Id.* at 39.  However, Fisher did not believe it was his responsibility to hire any engineering services for the job.  *Id.* at 31.  The original bid sent out for labor by Smiley did not advise Fisher to include the cost of an engineer for supervision of the bracing of the trusses.  *Id.* at 41.

On Friday, November 18, 2011, Fisher's laborers set twenty trusses. *Id.* at 47. Appellant Baird worked twenty-feet above ground and used Fisher's tools to assist with placement of the majority of the trusses. On Monday, November 21, 2011, there were four trusses remaining. *Id.* at 48. On that date, Baird was sitting in the middle of the last truss twenty-feet above ground, nailing in the bottom and side braces, when the structure collapsed. *Id.* at 45, 49. The four trusses set that day fell to the ground, burying Baird beneath them. *Id.* at 51.

Fisher was operating a scissor lift facing the opposite direction when he heard a "loud snap." *Id.* Fisher scrambled to find a saw to cut Baird out of the fallen materials and debris. As a result of the accident, Baird sustained serious bodily injuries.

In January 2012, Smiley retained an engineering firm to inspect the accident scene, design a bracing plan, and supervise the installation of the replacement trusses. The engineering firm's report found that the bowed trusses had been a contributing factor to the collapse of the roof.

In July 2012, Smiley commenced a civil action in Cambria County against Fairman's Roof Trusses for breach of contract and breach of warranty. In response, Fairman's filed a complaint to join Baird's employer, Chris Fisher t/d/b/a Chris Fisher Construction, as an additional defendant. In January 2013, Baird and his wife commenced a separate civil action in Westmoreland County against Smiley and Fairman's for products liability, negligent design, premises liability, negligence, and loss of consortium. *See*

***Baird v. Smiley et al.***, No. 193-2013 (Westmoreland Cty. Filed 1/14/2013). Thereafter, Smiley filed a motion to coordinate these complaints based on the common questions of law and facts. The motion was granted, and the case was transferred to Cambria County for coordination with Smiley's case against Fairman's and Fairman's claims against Fisher. Thereafter, Smiley filed a cross-claim against Fisher alleging that Fisher was either solely liable for the claims asserted by Appellants or required to indemnify Smiley pursuant to an alleged indemnification agreement between the parties. ***See*** Pa.R.C.P. 1031.1.

The trial court bifurcated the Appellants' claims against Fisher from all claims of liability against Smiley and Fairman's. The case against Smiley and Fairman's proceeded to a jury trial in June 2016. At the close of plaintiffs' case against all defendants, the trial court granted Smiley's oral motion for nonsuit. ***See*** Order, 7/1/2016. On July 1, 2016, the jury returned a verdict in Appellants' favor and against Fairman's in the amount of $501,107.41.

Appellants timely filed a post-trial motion for removal of compulsory nonsuit as to Smiley and for a new trial. The court denied relief. Appellants filed a notice of appeal and praecipe for entry of final judgement. On August 22, 2016, a final judgment was entered on the docket to reflect the jury verdict. Appellants timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a 1925(a) opinion invoking its reasons stated on the record on June 30, 2016, in granting Smiley's motion for nonsuit.

*See* TCO, 10/5/2016, at 3.

On appeal, Appellant presents the following issues:

I.     Whether the trial court erred in granting [Appellee] Smiley's motion for compulsory nonsuit where it failed to allow Defendant Fairman's to present its testimony evidence, which may have tortiously implicated [Appellee] Smiley?

II.    Whether the trial court erred relying on the Common Pleas case of ***Zangradi v. Kay Builders*** in determining that no issue of material fact had been presented as to Smiley's control over the installation of the roof trusses?

Appellant's Br. at 4.

First, Appellants contend that the entry of nonsuit in favor of Appellee Smiley at the close of Appellants' case in chief was improper prior to the presentation of evidence by all defendants, including Fairman's potential evidence against Smiley. Second, Appellants contend that the court erred in relying upon a court of common pleas case in deciding the motion. Both issues challenge the propriety of the trial court's decision to grant nonsuit in favor of Smiley in this case. We will address Appellants' arguments seriatim.

Our standard of review regarding the entry of nonsuit is well settled:

A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Pa.R.C.P. No. 230.1(a), (c); ***see Commonwealth v. Janssen Pharma.***, 8 A.3d 267, 269 n. 2 (Pa. 2010). Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving "the benefit of every reasonable inference and resolving all evidentiary conflicts

in [appellant's] favor." ***Agnew v. Dupler***, 717 A.2d 519, 523 (Pa. 1998). The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.

***Scampone v. Highland Park Care Ctr.***, 57 A.3d 582, 595–96 (Pa. 2012).

The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law. ***Barnes v. Alcoa, Inc.***, 145 A.3d 730, 735 (Pa. Super. 2016).

In 2001, the Rule of Civil Procedure governing compulsory nonsuit was amended to provide:

> (c) In an action involving more than one defendant, the court may not enter a nonsuit of any plaintiff prior to the close of the case of all plaintiffs against all defendants. The nonsuit may be entered in favor of
>
> > (1)    all of the defendants, or
> >
> > (2)    any of the defendants who have moved for nonsuit if all of the defendants stipulate on the record that no evidence will be presented that would establish liability of the defendant who has moved for the nonsuit.
>
> Note: The term "defendants" includes additional defendants.

Pa.R.C.P. No. 230.1.[2]  The modern trend is that nonsuit may be granted in

_____

[2] The amendment superseded the rule formerly known as Rule 2231(h), which allowed entry of nonsuit "in favor of any or all defendants." Cmt. 3, Pa.R.C.P. 230.1. The explanatory comment to the new rule states:

> This language was inappropriate since under the former rule, as Goodrich-Amram 2d § 2231(h):1 points out that a nonsuit may be entered only in favor of all defendants and not in favor of fewer than all defendants: But if the plaintiff makes out a prima

*(Footnote Continued Next Page)*

favor of one defendant at the close of plaintiff's case prior to the presentation of evidence by the defense only if the other defendant(s) stipulate on the record that they do not intend to present evidence as to the moving defendant's liability. Pa.R.C.P. 230.1(c). Otherwise, the proper procedure for the moving defendant is to seek a directed verdict at the end of the trial. *See* Pa.R.C.P. 2232(d).[3]

*(Footnote Continued)* ─────────────

> facie case against one or more of the defendants, then, as a practical matter, there will be no nonsuit proceedings at all. No motion can be made by the defendants until all their evidence is in. This is, of course not a nonsuit, but a motion for a directed verdict.

> New Rule 230.1(c) reflects this situation by continuing to provide that the court can enter a nonsuit in favor of all defendants. However, the rule adds the innovation that the court can enter judgment in favor of fewer than all defendants only "if all of the defendants stipulate on the record that no evidence will be presented that would establish liability of the defendant who has moved for the nonsuit."

Cmt. 3, Pa.R.C.P. No. 230.1.

[3] Rule 2232(d) further clarifies the different procedures to obtain a nonsuit as opposed to a directed verdict in multi-defendant litigation.

> (d) When a plaintiff joins two or more defendants and the evidence does not justify a recovery against all of them, the court shall enter a nonsuit or direct a verdict in favor of any defendant not shown to be liable either jointly, severally or separately, and the action shall continue and determine which of the remaining defendants are jointly, severally or separately liable with the same effect as though the defendants found to be liable were the only ones joined. As in other cases the court may enter judgment notwithstanding the verdict in favor of or against any of such defendants.

*(Footnote Continued Next Page)*

In their first issue, Appellants contend that the court erred in granting compulsory nonsuit in favor of Smiley after Appellants had presented their evidence as to liability because there was a strong likelihood that Fairman's would present inculpatory evidence against Smiley, who purchased the trusses from Fairman's. Appellants' Br. at 14 (citing in support **Mazza v. Mattiace**, 425 A.2d 809, 811 (Pa. Super. 1981). Appellants' theory presented in opposition to the entry of nonsuit was that Fairman's would present evidence that Smiley had a duty to hire an engineer to supervise the site from Fairman's warning to Smiley to hire an engineer to design a plan for installing the trusses. **See** N.T., 6/30/2016, at 15; Appellants' Post-Trial Motion, at ¶¶ 32-34. Appellants also contend that the court erroneously relied on Smiley's assertion that Fairman's consented to the motion, when Fairman's did not in fact join in Smiley's motion. Appellant's Br. at 15.

In response, Smiley contends that the evidence established that Fisher was responsible for the truss installation process and that the duty of hiring a design professional to ensure proper installation of the trusses was delegated to Fisher. **See** Smiley's Br. at 30. According to Smiley, compulsory nonsuit was proper given that "Fairman's offered no objection to Smiley's motion for nonsuit." Smiley's Br. at 29-30 (citing in support **Ptak v. Mason Town Men's Softball League**, 607 A.2d 297, 300 (Pa. Super.

*(Footnote Continued)* ————————

Pa.R.C.P. 2232.

1992)).  Smiley maintains that "if [Appellee] Fairman's entire case-in-chief was based on implicating Appellee Smiley with liability, [Fairman's] surely would have not only taken a position on Appellee Smiley's motion but would have taken a strong opposing position." *Id.*

Appellants are legally correct that it is "improper to grant a nonsuit in favor of one defendant before the other defendants have an opportunity to present their cases." *Ptak*, 607 A.2d at 300.  However, "in an action in tort there is authority for granting a nonsuit at the close of plaintiff's case in favor of one defendant, but only when it is clear that the other defendants cannot or will not tortiously implicate the dismissed defendant." *Mazza*, 425 A.2d at 812.  The lower court is authorized to grant compulsory nonsuit as to one defendant pursuant to Pa.R.C.P. 2232(d) "in favor of any defendant shown not to be liable either jointly, severally or separately" following the close of the plaintiff's case where it is clear that the nonmoving defendant does not intend to present testimony with respect to liability of the moving defendant pursuant to Pa.R.C.P. 230.1.  *See Ptak*, 607 A.2d at 300.

Fairman's indicated on the record that it was "not taking a position" on Smiley's oral motion for nonsuit.  N.T., 6/30/2016, at 15.  The issue is whether Fairman's lack of opposition to the motion was sufficient to satisfy the Rule 230.1(c)'s requirement that the court can enter nonsuit in favor of one defendant only where all "stipulate on the record that no evidence will be presented that would establish liability of the defendant who has moved

for the nonsuit." Pa.R.C.P. 230.1(c)(2); **see** Smiley's Br. at 29. In **Ptak**, the defendants joined in moving defendant's motion, and the majority of witnesses who could present evidence as to liability were already called during plaintiff's case in chief.

Here, the court found that Appellants had not satisfied their burden of proof to sustain a cause of action against Smiley individually based on the evidence presented. Fairman's did not explicitly stipulate on the record that it did not intend to present evidence as to Smiley's liability pursuant to Pa.R.C.P. 230.1(c). Notwithstanding, Fairman's lack of opposition to Smiley's motion suggested that it did not intend to present evidence as to Smiley's liability as part of its defense. Further, Appellants had the opportunity to develop a case for liability by examining all of the key witnesses during their case-in-chief.

Based on the record and in light of Fairman's response, it was reasonable for the trial court to conclude under the circumstances that Fairman's did not intend to present further evidence as to Smiley's liability.[4]

_____

[4] Fairman's has filed no brief in this appeal. There is simply no evidence from Fairman's that it intended to present additional evidence to implicate Smiley as to liability. There is no legal authority to support Appellants' position that the form of the nonmoving defendants' stipulation matters under Rule 230.1(c). We decline to delineate such a rule of form with no substance. In light of Fairman's response on the record, we find that it was reasonable for the trial court to conclude that Fairman's did not intend to present evidence as to Smiley's liability. Therefore, the court did not abuse its discretion in granting Smiley nonsuit at the end of Plaintiff's case.

For all intents and purposes, the criteria of 230.1(c) were met. Accordingly, we discern no abuse of discretion nor error of law in granting Smiley's motion for nonsuit at the close of plaintiffs' case prior to the presentation of Fairman's evidence.

Second, Appellants contend that the court erred in determining that no issue of material fact had been presented as to Smiley's control over the installation of the roof trusses based on *Zangrandi v. Kay Builders*, 2012 WL 7801872 (Pa. D. & C. 5th 2012), an unpublished case from the Court of Common Pleas of Lehigh County, Pennsylvania. Appellants' Br. at 17. Preliminarily, we note that the court recognized on the record that it was not bound by the court of common pleas' decision. *See* N.T., 6/30/2017, at 16. Further, the court stated on the record that it considered other authorities as well, including the cases cited by the parties in their written motions, and it specifically referenced this Court's decision in *Birt v. Firstenergy Corp.*, 891 A.2d 1281, 1293 (Pa. Super. 2006). Thus, Appellants are incorrect to suggest that the court decided the motion solely based on the unpublished trial court case.

At issue is whether Smiley owed a duty to Appellants.[5] In order to establish that a contractor owed a duty to a subcontractor's employee, a

_____

[5] "In order to establish a claim of negligence the plaintiff has the burden of proving four elements: 1) a duty or obligation recognized by law; 2) a breach of that duty; 3) a causal connection between the conduct and the
*(Footnote Continued Next Page)*

plaintiff must present evidence that a general contractor retained sufficient control at the site "over the manner, method, and operative details of the work" to be legally responsible for the harm to the plaintiff. ***Beil v. Telesis Construction, Inc.***, 11 A.3d 456, 466-47 (Pa. 2011); ***see*** RESTATEMENT (SECOND) TORTS § 414.

Appellants contend that they introduced sufficient evidence to establish an issue of fact as to whether Smiley "retained control over the installation of the roof trusses." Appellants' Br. at 17. According to Appellants, Smiley's duty was established by the following evidence: (1) Fairman's instructed Smiley to hire an engineer to design an installation plan; (2) "Smiley specifically ordered Fisher to continue installing the trusses despite being made aware of their defective condition;" and (3) after the accident, Smiley hired an engineer to supervise proper installation of the roof. ***Id.*** at 19-20. They also claim that Smiley had a duty to ensure the materials were in good condition and installed correctly. ***Id.*** at 22.

In response, Smiley argues that the trial court's decision to grant nonsuit is in accord with established law that "a contractor is not liable for injuries resulting from work entrusted to a subcontractor." ***Leonard v.***

*(Footnote Continued)* ────────────

resulting injury; and 4) actual damages." ***Kelly v. St. Mary Hosp.***, 778 A.2d 1224, 1225 (Pa. Super. 2001) (citation omitted).

*Commonwealth*, 771 A.2d 1238, 1240 (Pa. 2001); Smiley's Br. at 14-15.[6]

Under Pennsylvania law, a general contractor does not have a duty to a subcontractor's employee unless the general contractor retained control or right of supervision over the performance of the work. *Birt*, 891 A.2d at 1293 (noting that "a right of supervision" means "that the subcontractor is not entirely free to do the work in his own way"). Evidence that establishes that the contractor fully delegated the task creates a legal situation in which "contractors higher in tier no longer had control over the manner in which that work was done." *Leonard*, 771 A.2d at at 1242.

In *Leonard*, our Supreme Court took notice of a contract between the steel supply company and contractor that had initially placed responsibility on the general contractor, not the subcontractor supervising the actual work. *Id.* The Court found that the existence of such a relationship between the supplier and general contractor "does not make that responsibility nondelegable; nor does it give [the general contractor] a presumed presence at the site or control over the manner in which the subcontractor performed its work." *Id.*

---

[6] In *Leonard*, our Supreme Court reviewed the questions of "whether a general contractor or subcontractor who was not 'present' at the work site may nevertheless be in 'control' of the work site pursuant to contract or law so as to have a duty to make the site safe, and whether such a contractor or subcontractor may delegate such a duty to a subordinate subcontractor." *Leonard*, 771 A.2d at 1240.

> To hold otherwise would mean that one could subcontract for the performance of work but not successfully delegate the safety responsibility that normally accompanies that work. Logically, safety responsibility best rests on the subcontractor doing the work, for that party is most familiar with the work and its particular hazards. [Responsibility goes with authority]. Thus, a subcontractor who undertakes a task is in the best position to provide for the safe accomplishment thereof, and delegation of safety responsibility to that subcontractor does not deviate from the contractor's duty.

*Id.* (internal citations omitted).

Like in **Leonard**, Fairman's initially placed the burden of hiring an engineer on Smiley when the trusses were supplied to Smiley with the instruction to obtain an engineer to design a bracing plan. As in **Leonard**, this assignment of responsibility does not render the responsibility to design a bracing plan nondelegable. **Leonard**, 771 A.2d at 1242.

In this case, the trial court found "no evidence that Smiley controlled the manner in which Fisher performed his work." **See** N.T., 6/30/2016, at 20. We agree. Here, Smiley hired Fisher based on his experience in building pole barns; Smiley delegated the task of construction and supplying labor completely to him. **See** N.T. Smiley, at 30 (noting that Fisher had built twenty pole barns). Smiley did not go to the job site and made no attempt to supervise the manner or method in which Fisher did his construction work. **Id.**

Appellee Fairman was onsite when he delivered the defective trusses and observed the difficulties Fisher had with installing them. N.T. Fairman, at 35, 37. Fairman and Fisher exchanged dialogue on delivery day over the

fact that the bows made them difficult to brace. *Id.* at 37. Because Fisher appeared to be "in charge," Fairman gave the bracing instructions to Fisher, which caused Fisher's crew to stop putting trusses up and start adding bracing. *Id.* at 38, 40, 42. Fairman told Fisher directly that it is very important to follow the "X" bracing instructions to keep the trusses from "dominoing." *Id.* at 42-43.

This evidence established that Fisher supervised the safety of Mr. Baird and others within his control throughout the installation of the bowed trusses. *See* N.T. Fisher, at 12, 17-18, 39. Fisher was more familiar with the safety risks posed by the bowed trusses than Smiley. *Id.* at 39. Despite his experience, Fisher did not think that the trusses would fall or that the bowed trusses were dangerous. *Id.* Fisher could have stopped the work if there was a safety issue. Indeed, Fisher testified that he would have stopped the work if he believed the trusses were dangerous. *Id.* at 90. Based on the evidence presented, Fisher failed to follow the bracing plan provided by Fairman's and failed to consider the trusses a safety issue. *Id.* at 88. Fisher knew he was not following the bracing specifications that Fairman had given to him directly. *Id.* at 91-93.

Although Fairman never told Fisher that Smiley should retain a professional engineer to design the bracing, the evidence established that Smiley had delegated the responsibilities of safety onsite to Fisher. Fisher exercised total and complete control over the building of the structure.

Fisher's failure to take heed of Fairman's instructions was the proximate cause of Baird's injuries.

There is simply no evidence that Smiley controlled the manner in which Fisher supervised the Grow project or installation of defective trusses supplied by Fairman's to suggest that Fisher was "not entirely free to do the work in his own way." **Beil**, 11 A.3d at 467 (quoting RESTATEMENT (SECOND) OF TORTS § 414, cmt. C). Appellants failed to present significant evidence that Smiley retained control over the activities onsite "*beyond* a general right to order, inspect, make suggestions, or prescribe alterations or deviations." **Beil**, 11 A.3d at 467 (emphasis modified). Further, the responsibility for safety in this case rested with Fisher, who supervised the installation of the trusses. **See Leonard**, 771 A.2d at 1242. Because the trial court's findings are supported by the record, we discern no abuse of the trial court's discretion or error of law in entering nonsuit in Smiley's favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2017

- 17 -