J-A21025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MULTICULTURAL WELLNESS CENTER, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3431 EDA 2018 |
| TIPICO RESTAURANT | : | |

Appeal from the Order Entered October 16, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170702194

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED OCTOBER 02, 2020**

Appellant, Multicultural Wellness Center, Inc. (hereinafter "Appellant" or "the center") appeals from the order entered on October 16, 2018 granting compulsory non-suit in favor of Appellee, Tipico Restaurant ("Tipico").  Upon review, we affirm.

We briefly summarize the facts and procedural history of this case, as gleaned from the pleadings and testimony presented at trial, as follows. Belgica Santos de la Cruz ("Belgica") and Humberto de la Cruz ("Humberto"), licensed mental health therapists, purchased and opened the center in Philadelphia, Pennsylvania in 2008.  In 2012, they purchased a restaurant that was adjacent to the Center in order to utilize the restaurant parking lot for the Center's employees and patients. The restaurant, however, remained closed until 2015 because Belgica and Humberto were not interested in that

commercial enterprise. In 2015, when business at the Center began suffering, Paveli[1] de la Cruz ("Paveli"), Belgica and Humberto's son, opened the restaurant. Thereafter in June 2015, Paveli met with Yeneisy (a/k/a/ Yenny[2]) Cabrera ("Yenny") who claimed that her family had previously owned restaurants and she wanted to rent the restaurant. Paveli and Yenny allegedly partnered and opened Tipico[3] in August 2015. A year later, Belgica demanded rent from Yenny despite the lack of a written lease. On May 30, 2017, Appellant filed a landlord/tenant complaint against Tipico in Philadelphia municipal court. The municipal court entered judgment for Tipico on June 21, 2017.

Appellant appealed to the Philadelphia Court of Common Pleas ("trial court") on July 21, 2017. Following various continuances and the filing of three amended complaints, a bench trial commenced on September 17, 2018. In sum, Appellant alleged two causes of action against Tipico – breach of contract and unjust enrichment. Appellant presented the testimony of Belgica, Humberto, and Paveli and then rested. At the start of the second day

_____

[1] We note that the parties and the trial interchangeably spell "Paveli" as "Pavely." For consistency, we have used the spelling as it appears in Appellant's third amended complaint.

[2] "Yenny" is sometimes referred to as "Yenni," "Yennie," and/or "Jenny." For consistency, we use the spelling as set forth in Appellant's brief.

[3] Yenny purportedly named the establishment after a restaurant previously owned by her family that had the same name.

of trial, on October 2, 2018, Tipico orally moved for compulsory nonsuit, which the trial court granted. The trial court filed an order granting compulsory nonsuit on October 16, 2018. Appellant subsequently filed a motion for reconsideration to remove the nonsuit. The trial court denied relief on October 31, 2018. This timely appeal resulted.[4]

---

[4] Appellant filed a timely post-trial motion that the trial court denied on October 16, 2018. On November 14, 2018, Appellant filed a notice of appeal purporting to appeal from the denial of the motion to remove nonsuit. On November 16, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on December 7, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 15, 2019. On appeal, upon review of the certified record, we determined that the trial court did not enter an order entering judgment. "[I]n a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit." **Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004). On March 25, 2020, pursuant to this Court's policy, we remanded the case and directed Appellant to praecipe the trial court Prothonotary to enter final judgment on the verdict and to file with the Prothonotary of this Court, a certified copy of the trial court docket reflecting the entry of judgment within 30 days. We further noted that upon compliance with Pa.R.A.P. 301, pertaining to final orders, the notice of appeal previously filed in this matter would be treated as filed on the date of entry of final judgment. **See** Pa.R.A.P. 905(a)(5). Appellant praeciped the trial court for entry of judgment on March 25, 2020, the same day that we directed entry of judgment. However, "[i]n light of ongoing public-health concerns relating to the COVID-19 pandemic," our Supreme Court entered orders declaring a statewide judicial emergency on "March 16, March 18, March 24, April 1, and April 28, 2020." **In re Gen. Statewide Judicial Emergency**, No. 531 JAD, 2020 WL 3263266, at *1 (Pa. May 27, 2020). In this case, due to judicial emergency, the trial court clerk did not accept Appellant's praecipe until May 18, 2020 and the certified entry of judgment was delayed until June 29, 2020. Thereafter, Appellant filed proof of entry of judgment with this Court on July 24, 2020. Due to the various court closures related to COVID-19, we accept the entry of judgment as timely. As such, this case is now ready for disposition.

On appeal, Appellant presents the following issues for our review:

A. Did the trial court err in granting nonsuit and refusing to remove the nonsuit by no[t] complying with Pa.R.C.P. 230.1(a)(2) which governs [c]ompulsory [n]onsuit[?]

B. Is [Appellant] entitled to have the compulsory nonsuit []removed and have the case remanded for further proceedings[?]

Appellant's Brief at 5 (suggested answers omitted).[5]

Initially, Appellant argues that by granting compulsory nonsuit the trial court failed to follow Pa.R.C.P. 230.1(a)(2) which provides that in deciding a compulsory nonsuit, the trial court is required to consider only the evidence in the light most favorable to plaintiff. *Id.* at 38-41, *citing* Pa.R.C.P. 230.1.

Our standard of review is well-settled:

A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in appellant's favor. The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.

*Baird v. Smiley*, 169 A.3d 120, 124 (Pa. Super. 2017) (internal citations and quotations omitted). "When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and

---

[5] We have reordered the issues for clarity and ease of discussion. However, Appellant presents both issues in a single argument. Similarly, we address both issues together as one over-arching claim.

- 4 -

reasonable disagreement." ***MB Financial Bank v. Rao***, 201 A.3d 784, 788 (Pa. Super. 2018) (citation omitted).

Appellant contends that the trial court erred in granting compulsory nonsuit regarding the two causes of action as pled in its various consolidated complaints – breach of contract and unjust enrichment. We will examine each count of Appellant's complaint separately. With regard to its breach of contract claim, Appellant contends:

> [it] provided sufficient evidence to support its contention that it was an error of law to grant a nonsuit. [Appellant] produced sufficient evidence of an agreement to lease the restaurant premises to [Tipico] under a verbal lease, or, in the alternative an implied lease. And further, [Appellant] produced evidence of money owed and real estate exclusively retained by [Tipico] under theories of a lease agreement or unjust enrichment.

***Id.*** at 41.

More specifically, Appellant contends that although there was no written contract, "there was a definite oral lease in the present case." ***Id.*** at 23. Appellant argues the three witnesses it presented "testified with some variation that the Center would rent to Yenny's family, or the LLC she planned to register for the restaurant at 108 W. Wyoming Avenue in Philadelphia, with permissive use of the parking lot for a period of several months, until the business was up and making money, for a rental amount of $2,000[.00] per month." ***Id.*** at 24. Appellant further asserts:

> The fact that at one point Belgica [] indicated that, "we failed to get a lease because we were waiting for the restaurant to make some money" must be read in context with the rest of her testimony. She indicated that the Center needed $4,000[.00] or

$5,000[.00] per month to cover all the expenses, but agreed to give Tipico a chance to make some money for a few months at which time a written lease would be drafted with the more realistic amount. She said, however, it remained oral. And, when eventually she demanded that they agree to sign a lease, [Y]enny refused to agree to a written lease unless it included the parking lot.

\* \* \*

After these discussions, it is uncontested that Yenny's family moved into the restaurant, re-named it Tipico, had a [g]rand [o]pening party in the restaurant on August 13, 2015 and traveled to Harrisburg[, Pennsylvania (where] the Corporation Bureau [is located]) and signed documents registering Tipico, LLC with members including, Yenny, her aunt, Ana[,] and Pavel[i] all being present to sign and submit the documents. Finally, Yenny and her two aunts and Pavel[i] agreed among themselves that Yenny's family would own 75% and Paveli, 25% of Tipico.

*Id.* at 28-30. As such, because it claims that it presented evidence of an oral lease agreement, Appellant asserts that it is error for the trial court to grant compulsory nonsuit in Tipico's favor.

Our Court has previously determined:

Generally[, a]n agreement is an enforceable contract wherein the parties intended to conclude a binding agreement and the essential terms of that agreement are certain enough to provide the basis for providing an appropriate remedy. If the essential terms of the agreement are so uncertain that there is no basis for determining whether the agreement has been kept or broken, there is not an enforceable contract.

\* \* \*

[T]he question of whether an undisputed set of facts establishes a contract is a matter of law. It is also well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show

- 6 -

whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent. We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*United Environmental Group, Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa. Super. 2017) (citations omitted).

Here, the trial court found that Appellant had not established an oral agreement between the parties:

Throughout testimony of all three witnesses, the terms of the alleged oral [l]ease changed. Given the contradictory testimony, there was no way for the [trial c]ourt to ascertain the actual terms of the alleged oral [l]ease. [The trial c]ourt could not find that the terms alleged by [] Appellant were accurate, nor could the [trial c]ourt find that any of the terms of the alleged oral [l]ease were founded in fact.

Trial Court Opinion, 1/15/2019, at 7. The trial court further concluded that "testimony by the witnesses shows there was never an oral [l]ease, the parties involved would work together to see how what type of [l]ease would be appropriate in the future." *Id.* at 6. As such, the trial court determined there was no meeting of the minds for there to be an enforceable oral contract. Id. at 7.

Upon review of the certified record and viewing the evidence in the light most favorable to Appellant, as our standard requires, we discern no error by the trial court in entering compulsory nonsuit on Appellant's breach of contract claim. The witnesses claimed that Tipico initially agreed to pay $2,000.00 per month for rent, but Appellant failed to obtain a written lease because it was

- 7 -

waiting to see whether the restaurant was profitable.  N.T., 9/17/2018, at 27, 32, and 103.  Belgica testified that Appellant intended to raise the rent to "$4,000.00 or $5,000.00" after "six or seven months."  *Id.* at 32.  In June of 2016, almost one year after Tipico opened, Belgica testified that Appellant would not agree to a $2,000.00 lease unless it was for a duration of "five years, possibly ten years" and "had to include the parking lot[.]"  *Id.* at 33.  Belgica also acknowledged that in its original complaint, Appellant initially alleged that Tipico agreed to provide Appellant with a percentage of the restaurant's revenue as rent.  *Id.* at 52; 57-68.  Paveli testified that his parents initially agreed to pay the rent for the restaurant, but that "in the end" Paveli and Yenny would be responsible for it.  *Id.* at 139.

Based upon all of the foregoing, we conclude that Appellant failed to set forth evidence to support a cause of action for breach of contract.  In this case, there was simply no meeting of the minds.  Appellant alleged that it was due a percentage of net revenue from the restaurant as rent, but then also later claimed that it was due $2,000.00 per month in rent, which would increase to either $4,000.00 or $5,000.00 at an undetermined date in the future.  Appellant did not provide evidence establishing clear terms of an agreement.  Moreover, there was evidence of a dispute over the use of the adjacent parking lot that was never negotiated fully.  As Appellant was unable to determine the precise terms of the alleged oral contract it purportedly entered, Tipico simply could not have mutually assented.   Here, because the essential terms of the agreement were so uncertain that there was no basis

for determining whether the agreement had been kept or broken, there was no enforceable contract. As such, we discern no error in entering compulsory nonsuit regarding Appellant's breach of contract claim.

In the alternative, Appellant argues that it set forth a viable claim for unjust enrichment and that it was error for the trial court to grant Tipico nonsuit on this count of its third amended complaint. Appellant's Brief at 34-37. More specifically, Appellant maintains:

> If one party is enriched at the expense of the other, and, it is against equity and good conscience then the former should not be permitted from retaining what is sought to be recovered. In this case, [Appellant] sought to recover possession of [] real estate and loss of rents. Belgica testified emotionally as to the debts they incurred and paid for the restaurant, including, real estate taxes, the water bill and the mortgage. As of the time of trial, Tipico had operated the restaurant for more than three years. To sustain a claim for unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable to retain. [Here, t]here is an issue as to the value of the lost rent from [the] restaurant, however, the fact that it was an operating restaurant presumes its unique value as real estate if nothing more.
>
> *         *         *
>
> For now, however, it is enough that the factual evidence of unjust enrichment and *quantum meruit* be found legally sufficient and, therefore, show that it was error to deny [Appellant's] motion to remove nonsuit. Viewing all evidence in a light most favorable to [] Appellant[] in this case, it is submitted that there is no doubt that if a contract is not found, there is a legal basis for unjust enrichment.

*Id.* at 35-37 (quotations and case citation omitted).

This Court has stated:

A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The elements of unjust enrichment are benefits conferred on the defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit*.

***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc*.**, 933 A.2d 664, 668-669 (Pa. Super. 2007) (internal citations and quotations omitted).

Here, at trial, Humberto testified, and provided written documentation,[6] that Yenny gave him $20,000.00 as a "friendly loan" in June of 2015 to alleviate "financial hardships" related to the Center. N.T., 9/17/2018, at 89-90. The funds were to be repaid within two weeks. ***Id.*** at 90. To date, that $20,000.00 has not been repaid to Yenny. ***Id.*** at 93-96. On appeal, Appellant concedes it received $20,000.00 and that those funds have not been repaid.[7]

---

[6]  We note that the documentation was marked as a trial exhibit, but upon review we were unable to locate it in the certified record. ***See*** N.T., 9/17/2018, at 89-90.

[7] Appellant states:

Instead, it argues that "over three years, the loss suffered by [Appellant] was far greater than the loan amount of $20,000[.00]." Appellant's Brief at 36. However, upon review of the transcripts from trial, Appellant did not provide evidence of any income generated by Tipico or evidence regarding the fair market value of the property and/or general restaurant operating expenses paid by Appellant, for an overall determination of whether Tipico received a benefit to Appellant's detriment. Furthermore, there was evidence that Tipico made approximately $10,000.00 in physical improvements to the property at issue. N.T., 9/17/2018, at 152-161. Accordingly, in sum, the evidence presented at trial showed that Appellant received approximately $30,000.00 in benefits from Tipico which would off-set any losses as alleged by Appellant. However, without specific evidence of Appellant's alleged loss, it was impossible to discern whether Tipico was unjustly enriched. As such, Appellant failed to establish a right to relief for unjust enrichment and the trial court's grant of compulsory nonsuit was proper.

Order affirmed.

_____

There may be a set-off for the loan which was raised by the owner of Tipico, although it was not alleged that Tipico lent him the fund. Further, Humberto and Belgica testified that more than a year after the loan was due, Humberto was ready to re-pay Yenny, but she declined to accept the payment. What her reason for doing so can be speculated upon. But it is clear that the minimal rent agreed to, at least discussed and believed to be agreed upon, was $2,000[.00] monthly.

Appellant's Brief at 36.

President Judge Emeritus Ford Elliott joins.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/20