J-S40031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ERICA FINLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENCOR, INC., KEYSTONE PROPERTY | : | No. 2148 EDA 2023 |
| GROUP, ELEVATOR CODE | : | |
| INSPECTIONS, INC., AMERIHEALTH | : | |
| NORTHEAST, LLC, AMERIHEALTH | : | |
| ADMINISTRATORS, INC., | : | |
| AMERIHEALTH SERVICES, INC., 300 | : | |
| AIRPORT KPG III, LLC, C&D | : | |
| SECURITY MANAGEMENT, INC. | : | |
| UNIVERSAL PROTECTION SERVICES, | : | |
| LLC, C&D ENTERPRISES, INC., 200 | : | |
| AIRPORT KPG III, LLC, GAL | : | |
| MANUFACTURING COMPANY, LLC, | : | |
| VANTAGE ELEVATOR SOLUTIONS | : | |

Appeal from the Order Entered July 17, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 191200047

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                 **FILED MARCH 5, 2025**

Erica Finley ("Finley") appeals from the order denying her post-trial motion to remove the nonsuit entered in favor of Kencor, Inc. ("Kencor"), Keystone Property Group ("Keystone"), and 200 Airport KPG III, LLC ("200 Airport") (collectively, the "Defendants").[1] We affirm.

---

[1] "Where a court has entered a judgment of compulsory nonsuit, the appeal lies not from the entry of the judgment itself, but rather from the court's

*(Footnote Continued Next Page)*

On December 2, 2019, Finley commenced this personal injury action by complaint against, *inter alia*, the Defendants.[2]  Finley alleged that, on June 6, 2018, the Defendants' negligent maintenance of an elevator in an office building located at 200 Stevens Drive, Philadelphia (the "Building"), caused the elevator door to "suddenly and without warning close[]" on Finley, leading to injuries to her right arm.  First Amended Complaint, 5/29/20, at ¶ 70.

200 Airport owns the Building, and Keystone is the property manager for the Building.  Kencor performed maintenance on the elevators at the Building pursuant to a maintenance agreement with Keystone.  On the date of the incident, Finley was an employee of AmeriHealth Caritas ("AmeriHealth"), which leased the Building from 200 Airport.

This matter proceeded to a jury trial in March 2023.  Finley testified that, on June 6, 2018, she was entering Elevator 1 in the lobby of the Building to return to her office, when the elevator door "slammed" on her right thumb, causing her right arm to twist.  N.T., 3/21/23, at 118, 120.  Finley described the force from the elevator door as "a fast slam."  ***Id***. at 122.  James Filippone ("Filippone"), Finley's expert witness in elevator maintenance and elevator accident reconstruction, opined that Elevator 1's "doors closed too fast on

refusal to remove it."  ***Baird v. Smiley***, 169 A.3d 120, 122 n.1 (Pa. Super. 2017) (citation omitted).

[2] None of the other named defendants remained in this action at the time of trial.  The trial court granted the unopposed summary judgment motion brought by GAL Manufacturing Company, LLC and Vantage Elevator Solutions, and Finley stipulated to the dismissal of the remaining defendants.

[Finley] and she injured her hand" as a result. Finley's Post-Trial Motion to Remove Nonsuit, 3/28/23, Exhibit D, at 30 (Filippone testifying via video deposition);[3] **see** N.T., 3/22/23, at 30-32, 37-38 (Finley stipulating to Filippone's expert qualifications and playing his video deposition).

We now review the evidence related to whether the Defendants' actual or constructive knowledge of any issues with the door closing speed for Elevator 1. Finley testified she rode the elevators in the Building regularly from 2012, when she began working at AmeriHealth, through the date of the incident at issue. **See** N.T., 3/21/23, at 108, 158. Finley stated she had never experienced any issues with Elevator 1 prior to June 8, 2018, and she was not aware of any instances when the doors of Elevator 1 improperly closed on others. **See id**. at 159. Finley's expert, Filippone, did not offer an opinion regarding whether the Defendants were or should have been on notice regarding Elevator 1's allegedly unsafe door speed.

Roland Chase ("Chase"), AmeriHealth's security manager, testified he reviewed the Building's security video coinciding with the instances when Finley swiped her security card to enter the lobby area on June 6, 2018. **See**

_____

[3] We observe that only four pages of Filippone's video deposition transcript appear in the certified record for this appeal. **See** Finley's Post-Trial Motion to Remove Nonsuit, 3/28/23, Exhibit D (reproducing pages 30 to 32 of the Filippone deposition transcript); Defendants Keystone and 200 Airport's Opposition to Finley's Post-Trial Motion, 4/6/23, Exhibit 1 (reproducing page 53 of the Filippone deposition transcript); **see also** Pa.R.A.P. 1921, note (providing that an "appellate court may consider only the facts which have been duly certified in the record on appeal" and "[u]ltimate responsibility for a complete record rests with the party raising" the appellate issue).

*id*. at 46, 50-51. Chase stated he did not observe any issues on the video related to the operation of the elevators, and he did not report any problems with the elevators to Keystone. *See id*. at 73-74. Chase testified that Finley informed him that her thumb "got caught" in the elevator doors, not that the doors closed on her. *Id*. at 69, 77.

Wendy Williams ("Williams"), a leave specialist at AmeriHealth, met with Finley on June 8, 2018, and completed a Workers' Compensation incident report documenting their conversation. *See id*. at 78-81. Williams testified that Finley informed her that "her hand got stuck in the elevator." *Id*. at 83-84. Williams did not report to her supervisor any issues with the operation of Elevator 1 following her conversation with Finley. *See id*. at 85-86.

Michael McQuaid, Keystone's property manager for the Building, testified that Elevator Code Inspections, Inc. ("ECI") performed a semi-annual inspection of the Building's elevators on April 17, 2018. *See id*. at 87, 94-95, 103. The April 23, 2018 inspection report ECI provided to McQuaid revealed no deficiencies with the operation of the elevators at the Building. *See id*. at 104. McQuaid testified that he was not aware of any issues with Elevator 1 in the months prior to the June 6, 2018 incident. *See id*. at 103.

In her case in chief, Finley presented the testimony of two Kencor employees as on cross-examination: Jason Marvel ("Marvel"), an elevator mechanic, and Matthew Hollinshead ("Hollinshead"), the service manager. *See* N.T., 3/22/23, at 46, 99. Pursuant to its contract with Keystone, Kencor performed monthly preventive maintenance on the elevators in the Building

and responded to maintenance calls when issues with the elevators arose. *See id*. at 46-47, 100-04. Both Marvel and Hollinshead denied receiving any reports that the elevator doors on Elevator 1 were closing too quickly, either before or after the June 6, 2018 incident. *See id*. at 80-81, 127, 133.

Marvel stated he visited the Building on March 5, 2018, in response to a maintenance call report that the doors of Elevator 1 were intermittently failing to open on the third floor. *See id*. at 59-61, 81. During the maintenance call, Marvel physically inspected Elevator 1, checked Elevator 1's fault log and found no faults, rode on the elevator for several hours, and monitored it from the machine room. *See id*. at 63-64, 82-84. After nearly five hours of testing, Marvel was unable to recreate the "door not opening issue." *Id*. at 64, 85. Marvel stated that, if the doors had closed too quickly for the manufacturer's specifications, a fault would appear in the fault log. *See id*. at 94-95.

Ultimately, Marvel determined that Elevator 1 was safe and placed it back into service. *See id*. at 93. Crucially, Marvel and Hollinshead reported that the March 5, 2018 call did not provide any indication that there were any issues with Elevator 1's door closing speed. *See id*. at 97-98 (Marvel stating that the March 5, 2018 call was for "the exact opposite" issue and "had nothing to do with the door closing at all"), 130 (Hollinshead stating that the maintenance call did not relate to the closing speed of Elevator 1's doors and would have given Marvel no reason to check the door closing time).

After the March 5, 2018 service call, Marvel performed regular monthly maintenance visits at the Building on March 20, April 17, and May 15, 2018. *See id*. at 87-90. At each of these visits, Marvel visually inspected the elevator doors closing to ensure that they did not close too quickly and checked the fault logs for each elevator. *See id*. at 76-79. Marvel discovered no issues with respect to the operation of the elevators during the March, April, and May monthly visits. *See id*. at 87-90.

Hollinshead testified that, to comply with the maximum kinetic force requirement set forth in the applicable safety code, Elevator 1's minimum door closing time was 1.69 seconds. *See id*. at 105-08. While Hollinshead conceded that Kencor's elevator mechanics did not time the elevator doors closing with a stopwatch during monthly visits, he stated that mechanics were able to ensure code compliance by confirming that the elevator doors did not close in less than two seconds. *See id*. at 111-12, 125. Hollinshead testified that he relied on ECI to calculate and test the kinetic force generated by elevator doors, in accordance with the provisions of the code. *See id*. at 115-17. Hollinshead reiterated that ECI reported no deficiencies in the operations of the Building's elevators in its April 23, 2018 semi-annual inspection report. *See id*. at 131-33.

Following the close of Finley's case in chief, the Defendants moved for nonsuit on the basis that Finley did not present evidence showing that they had actual or constructive notice of a dangerous condition with respect to Elevator 1. *See* N.T., 3/23/23, at 49-50. The trial court granted the motion

for nonsuit. *See id*. at 117; *see also* Order, 3/23/23. Finley filed a timely post-trial motion to remove the nonsuit, which the trial court denied. Finley filed a timely notice of appeal. Both she and the trial court have complied with Pa.R.A.P. 1925.

Finley presents the following issues for our review:

1. Did the trial court [] abuse its discretion and commit errors of law in not permitting [Finley] to put on all of the evidence in [Finley's] case in chief?

2. Did the trial court err[] in granting the non-suit where [Finley] testified that she was injured as a result of the elevator door malfunctioning, crushing [Finley's] thumb, not allowing her body to pass through the elevator door without injury?

3. Did the trial court err[] and abuse its discretion in granting the [Defendants'] motion for a non-suit?

4. Did the trial court err[] in not granting [Finley's] post[-]trial motion to remove the non-suit filed on March 28, 2023?

Finley's Brief at 3 (unnecessary capitalization omitted).

In her first issue, Finley purports to challenge the trial court's exclusion of evidence that she sought to raise in her case in chief. However, Finley fails to mention this issue, let alone develop it in any meaningful manner, in the argument section of her brief. Therefore, Finley has waived this issue. *See Purple Orchid, Inc. v. Pennsylvania State Police*, 813 A.2d 801, 804 (Pa. 2002) (stating that appellant waives issue in statement of questions if it does not otherwise develop issue in body of appellate brief).

In her remaining three issues, which she presents in a single consolidated section in her brief, Finley challenges the trial court's grant of

nonsuit in favor of the Defendants. We review an order denying a motion to remove a nonsuit to determine if the trial court committed an abuse of discretion or error of law. *See Baird*, 169 A.3d at 124.

> A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in appellant's favor. The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.

*Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 595-96 (Pa. 2012) (citations, quotation marks, and brackets omitted).

To prevail in a negligence action, a plaintiff must prove that the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Collins v. Philadelphia Suburban Development Corp.*, 179 A.3d 69, 73 (Pa. Super. 2018) (citation omitted). A possessor of land owes a duty to protect invitees[4] from a dangerous condition on the land only if the possessor:

---

[4] It is undisputed that Finley was a business invitee at the Building on June 6, 2018. "A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. 1998). "The duty owed to a business invitee is the highest duty owed to any entrant upon land." *Id*.

- 8 -

(a) knows or by the exercise or reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Marshall v. Brown's IA, LLC*, 213 A.3d 263, 270 (Pa. Super. 2019) (citation omitted); *see also* Restatement (Second) of Torts § 343.

This Court has explained:

An invitee must present evidence proving either the possessor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition. What constitutes constructive notice depends on the circumstances of the case, but one of the most important factors to consider is the time that elapsed between the origin of the condition and the accident.

*Collins*, 179 A.3d at 74 (citations, brackets, and quotation marks omitted). A plaintiff may establish constructive notice of a harmful condition through evidence that the condition is "of a type with an inherently sustained duration, as opposed to a transitory" condition and testimony of a witness that they observed the defect immediately before or after the relevant incident. *See Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001). "[W]here the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." *Myers v. Penn Traffic Co.*, 606 A.2d 926, 929 (Pa. Super. 1992) (*en banc*) (citation omitted).

Additionally, our Supreme Court has held that an elevator maintenance company that "undertakes by contract to make periodic examinations and inspections of equipment" may be liable to third parties injured on an elevator if the "defective or dangerous condition" that caused the injury was "discoverable by reasonable inspection." **Evans v. Otis Elevator Co.**, 168 A.2d 573, 576-77 (Pa. 1961) (affirming jury verdict in favor of plaintiff injured by falling board in elevator, where witnesses noticed protruding sideboards in the days prior to the incident and expert opined that a competent inspector would have ascertained that the sideboards were at risk of colliding with counterweight); **see also Williams v. Otis Elevator Co.**, 598 A.2d 302, 303-04 (Pa. Super. 1991) (upholding jury verdict in favor of plaintiff injured when elevator suddenly lurched as she was exiting, where evidence showed a "steadily increasing number of" maintenance calls for the elevator and expert opined that maintenance company should have identified uncorrected defect).[5]

---

[5] Under the prevailing law, two distinct standards are at issue in this case. As possessors of the Building, Keystone and 200 Airport may be subject to liability if they had actual or constructive knowledge of the dangerous condition that allegedly caused Finley's injuries. **See Marshall**, 213 A.3d at 270. Kencor's potential liability, which derives from its contract to provide periodic elevator maintenance service, attaches only if Kencor could have discovered the alleged dangerous condition in Elevator 1 "by reasonable inspection." **Evans**, 168 A.2d at 576. While the parties do not address this distinction in their briefs, we conclude that the actual or constructive notice and reasonable inspection standards substantially overlap and Finley did not establish a right to relief as to any of the Defendants. **See infra**.

- 10 -

Finley argues she demonstrated that the Defendants had notice of a dangerous condition concerning Elevator 1 based on the March 5, 2018 maintenance call for an intermittent failure of the doors to open. Finley emphasizes that the call related to "the same doors to the same elevator which crushed [Finley] on June 6, 2018, some three months after the report of issues with the elevator doors." Finley's Brief at 13-14. Finley avers that "[c]learly, this evidence is not only constructive notice, but actual notice, that there were problems with the elevator doors to Elevator 1." *Id*. at 14.

The trial court concluded that nonsuit was proper where Finley failed to present evidence establishing a reasonable inference that the Defendants had actual or constructive notice of a dangerous condition with respect to Elevator 1's door speed. The court explained:

> At no point did any of . . . Finley's witnesses testify to any history of any elevator doors closing too fast [in] the [Building.] Finley herself, as well as the multiple witnesses from Keystone and Kencor[,] denied any knowledge of such history. At no point during the four different maintenance/inspection dates — March 5, March 20, April 17, and May 15 — did any of the elevators present indication of the doors closing too fast. The April 23, 2018 inspection report contained no indication of deficiencies. . . . Marvel explained a simple, accurate method to check that the doors were not closing too fast. Such an alleged defect is more transitory that durable in nature. . . . Finley presented no witness beyond herself who observed said defect before or after the incident, and her own testimony is undermined by the absence of any description of door speed in her reports to . . . Chase and . . . Williams the day of the incident.
>
> Absent any evidence of actual or constructive notice of increased door closing speed, and absent any evidence of increased door speed across five different maintenance/inspection

events in the three months preceding the incident, . . . Finley could not meet her burden.

Trial Court Opinion, 3/28/24, at 9-10.

Based on our review, we conclude that the trial court did not err or abuse its discretion in granting nonsuit in favor of the Defendants. **See Baird**, 169 A.3d at 124. As the trial court explained, Finley's case lacked evidence that anyone reported an issue with the speed of Elevator 1's doors before or after the June 8, 2018 incident. We agree with the trial court that March 5, 2018 service call related to an entirely different issue, "the failure of Elevator 1's doors to open on the third floor, not any issue with closing speed." Trial Court Opinion, 3/28/24, at 9. The record reflects that Marvel thoroughly investigated Elevator 1 during the March 5, 2018 call, and three subsequent monthly maintenance visits and a semi-annual inspection uncovered no issues with respect to Elevator 1.

We therefore conclude that Finley did not establish a right to relief on her negligence action where the evidence would not have permitted a jury to infer that Defendants 200 Airport and Keystone had actual or constructive notice of a dangerous condition with respect to Elevator 1. **See Scampone**, 57 A.3d at 595-96; **see also Marshall**, 213 A.3d at 270. Furthermore, Finley failed to present evidence demonstrating that Kencor, the company contracted to perform regular maintenance on the Building's elevators, ignored a "defective or dangerous condition" concerning Elevator 1 that was "discoverable by reasonable inspection." **Evans**, 168 A.2d at 576.

Accordingly, we determine that no relief is due on Finley's issues. We affirm the trial court's order denying Finley's post-trial motion to remove the nonsuit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025