J-S16005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GAIL MCKINNEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDENS CORPORATION, A/K/A, J | : | No. 1755 EDA 2020 |
| EDENS CORPORATION, | : | |
| INDIVIDUALLY AND D/B/A E.I.G. A | : | |
| JOINT VENTURE AND | : | |
| INDEPENDENCE CONSTRUCTORS | : | |
| CORP., INDIVIDUALLY AND D/B/A, | : | |
| E.I.G., A JOINT VENTURE AND | : | |
| GESSLER CONSTRUCTION CO., INC., | : | |
| INDIVIDUALLY AND D/B/A, E.I.G. A | : | |
| JOINT VENTURE, AND SEPTA | : | |

Appeal from the Order Entered August 13, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180801938

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 07, 2021**

Appellant, Gail McKinney, appeals from the trial court's August 13, 2020

order denying her post-trial motion to remove a nonsuit entered in favor of

Appellees, Edens Corporation, a/k/a, J Edens Corporation, individually and

d/b/a E.I.G. a Joint Venture and Independence Constructors Corp.,

individually and d/b/a, E.I.G., a Joint Venture and Gessler Construction Co.,

_____

[*] Former Justice specially assigned to the Superior Court.

Inc., individually and d/b/a, E.I.G. a Joint Venture (collectively referred to herein as "EIG").[1,2]  We affirm.

Ms. McKinney slipped and fell on black ice in the handicapped parking lot of the SEPTA Thorndale train station on March 20, 2017, shattering her kneecap.  In addition to suing SEPTA, she brought a negligence claim against EIG, SEPTA's snow-removal contractor, claiming, *inter alia*, that EIG was negligent by "[a]llowing and permitting foreseeably dangerous conditions to exist in … the … train station parking lot [that were] caused and/or created by negligently performed snow plowing and/or shoveling when [EIG] knew or should have known of said conditions[.]"  Complaint, 8/21/18, at ¶ 26(a). Specifically, she averred that EIG "negligently plow[ed] and/or shovel[ed] snow into piles which were subject to melting and re-freezing and leaving same in an area where there would be water run-off onto the parking lot surface which created a foreseeable hazardous condition[.]"  *Id.* at ¶ 26(b). The trial court summarized the proceedings that then ensued below as follows:

> Following a jury trial that lasted from March 9 to March 13, 2020, nonsuit was entered [in favor of EIG].  [Ms. McKinney] filed a post-trial motion, which was denied, following a COVID-19 delay, on

---

[1] "Where a court has entered a judgment of compulsory nonsuit, the appeal lies not from the entry of the judgment itself, but rather from the court's refusal to remove it."  ***Baird v. Smiley***, 169 A.3d 120, 122 n.1 (Pa. Super. 2017) (citation omitted).

[2] Though listed in the caption, the trial court granted Southeastern Pennsylvania Transportation Authority ("SEPTA") summary judgment prior to trial based on sovereign immunity, and SEPTA is not involved in this appeal.

August 13, 2020.[3]  On September 8, 2020, [Ms. McKinney] filed her appeal to the Superior Court.  On October 26, 2020, [Ms. McKinney] filed a [timely] Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b)….

**EVIDENCE AT TRIAL**

Witness Michelle Billingsley testified that [Ms. McKinney] was at the SEPTA Thorndale regional rail station on the morning of March 20, 2017.  Ms. Billingsley testified that there had been a [snowstorm] previously, and had noticed some black ice, but not much snow on the ground.[4]  Ms. Billingsley witnessed [Ms. McKinney] slip[-]and[-]fall in the handicap spot of the parking lot.[5]

SEPTA employee Evan Wade testified that he is SEPTA's manager of engineering, maintenance, and construction contracts.  Mr. Wade manages third-party contracts, including the snow removal contract with [EIG].  Mr. Wade testified that SEPTA wrote the snow removal contract[,] and it was his responsibility to ensure that

_____

[3] The trial court had granted leave for Ms. McKinney to file a post-trial motion *nunc pro tunc* due to circumstances relating to the COVID-19 pandemic.

[4] Ms. McKinney details in her brief that "a heavy snowfall fell in the Philadelphia area on March 14-15, 2017, measuring 6½ inches at the … parking lots at the SEPTA Thorndale station."  Ms. McKinney's Brief at 14 (citations omitted).  Further, Ms. Billingsley testified at trial that, on the morning of Ms. McKinney's fall on March 20, 2017, "there was a concern all over the news that there would be black ice because the snow had melted and it was just frozen…."  N.T. Trial, 3/9/20, at 78.  Ms. McKinney also testified at trial that she was aware of reports of black ice before leaving her house on March 20, 2017.  N.T. Trial, 3/12/20, at 60.

[5] Specifically, Ms. McKinney asserts in her brief that she fell in "the hatched area for handicapped access of a parking space" in the middle of the parking lot.  **See** Ms. McKinney's Brief at 13 (citing to the testimony of J. Nelson Wiest, who was hired by Ms. McKinney to take measurements of the parking lot).  She says that "[t]he grade in the cross-hatched area where [she] fell is 2%, which is the maximum for handicapped spaces, 'as is the majority of the parking lot there.'"  **Id.** (citation omitted).  Ms. McKinney presented evidence at trial that the area in the center of the lot where she fell is the highest elevated point in the lot, and that the lot slopes from its middle down to the street.  **Id.** (citation omitted).

[EIG] complied with the specifications in the contract. Mr. Wade admit[ted] that it was SEPTA's responsibility to remove snow and ice from the parking lots. He testified that [EIG] is only allowed to perform snow removal tasks when [it is] directed and authorized by SEPTA. Mr. Wade also admitted that after [EIG] removed the snow and salted the property on March 16, 2017, SEPTA did not give deployment orders to [EIG] after March 16, 20[17]. Likewise, [EIG] was never hired to remove any snow that remained on the lot after it was plowed, nor [was it] hired to remove all snow at any point.

Trial Court Opinion ("TCO"), 1/8/21, at 1-2 (unnumbered pages; internal citations omitted).

In granting the nonsuit in favor of EIG, the trial court explained in its Rule 1925(a) opinion that:

[Ms. McKinney] failed to establish that [EIG] was responsible for her slip[-]and[-]fall. SEPTA admitted [at] trial that [it was] responsible for the management of [its] property, including snow and ice. [It] had contracted [EIG] to clear out snow, only at the direct authorization and permission to enter the property and do so [*sic*]. [EIG] completed the snow removal and salting on March 16, 20[17], which SEPTA found satisfactory. SEPTA then had four days to observe the parking lot and request that [EIG] return to clear up snow or ice that had accumulated, but failed to do so. As the court stated at trial, "I find that [EIG] was not in breach of [its] contract. [It] obviously performed the contract that day up to specifications because it was inspected by SEPTA and SEPTA said it was all right. In fact, [it] had been doing that contract for 35 years. That's the way [it] did that lot hundreds of times. If SEPTA had a complaint about it, [it] never made it known." [EIG] completed the task it had been contracted to do and had no duty, nor any right, to enter the property and complete any further work. To hold [EIG] liable for a slip[-]and[-]fall, that was apparently the fault of SEPTA, four days after [EIG] had completed [its] contractual duty to clear snow and ice would be a miscarriage of justice. However, SEPTA was not a part of this case as [it] had been granted sovereign immunity, which, unfortunately for [Ms. McKinney], makes this a claim which cannot be satisfied. Nonsuit was proper.

TCO at 2-3 (unnumbered pages; internal citation omitted).

On appeal, Ms. McKinney raises the following issues for our review:

1. Did the trial court commit an error of law in granting nonsuit on the basis that … EIG did not breach its snow-removal contract with SEPTA as a matter of law where [Ms. McKinney] presented evidence at trial that EIG breached several contract specifications and it was for the jury to determine breach and causation and to evaluate the credibility [*sic*] in making that determination?

2. Did the trial court commit an error of law in granting nonsuit because … EIG owed [Ms. McKinney] a duty under Restatement Section 324A (as the [c]ourt ruled during oral argument), and it was for the jury to determine whether EIG breached that duty and whether the breach caused [Ms. McKinney's] injuries?

3. Did the trial court commit an error of law in granting nonsuit on the basis that "[i]t's just so attenuated" because [Ms. McKinney] presented sufficient evidence to show proximate cause and SEPTA's acts or omissions were not a superseding cause of [her] injuries as a matter of law?

4. Did the trial court commit an error of law in granting nonsuit on the basis that [Ms. McKinney] assumed the risk of her injuries as a matter of law because it was not beyond question that she voluntarily and knowingly proceeded in the face of an obvious and dangerous condition, and … EIG failed to prove the availability of a safe alternative pathway?

Ms. McKinney's Brief at 3-4.

We apply the following standard of review regarding the entry of nonsuit:

> A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with [the] appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in [the appellant's] favor. The compulsory nonsuit

is otherwise properly removed and the matter remanded for a new trial.

The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law.

***Baird***, 169 A.3d at 124 (citations and internal quotation marks omitted; some brackets added).

We also remain mindful that,

[i]n order to hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

***Reason v. Kathryn's Korner Thrift Shop***, 169 A.3d 96, 101 (Pa. Super. 2017) (citation omitted).

We address Ms. McKinney's first, second, and third issues together. Ms. McKinney argues that the trial court erred in determining that "EIG did not breach its snow-removal contract with SEPTA as a matter of law because [Ms. McKinney] presented evidence that EIG breached several contract specifications and it was for the jury to determine breach and causation[,] and to evaluate the credibility of witnesses in making those determinations." Ms. McKinney's Brief at 33 (unnecessary capitalization and emphasis omitted). She says that the evidence at trial showed that EIG breached its contract with SEPTA, as the contract provided that:

- "All accumulation of snow and/or ice shall be cleared from the entire parking lot area."

- "Particular attention must be paid to any inclined areas, entrances and exits where a uniform heavy and generous application of salt will be spread."

- "Contractor must be aware of the location of handicapped spaces and must not store snow in these spaces."

- "Contractor should attempt to place the plowed snow in lower sections of the lot when possible. This prevents melted water runoff from traveling downward in the lot during the warmer part of the day and turning to ice as it gets colder."

- "Recommended one or two shovellers [*sic*] ride with the parking crew so that plow-ins can be shoveled out in a timely manner."

***Id.*** at 15 (citations omitted).

Further, Ms. McKinney argues that:

There was evidence [Ms. McKinney] fell in "the hatched area for handicapped access of a parking space" in the middle of the parking lot when she stepped over a pile of snow. The middle in the center of the parking lot where she fell "still had snow in it" "through that whole week before" her fall. EIG acknowledged that it left snow piled in the "dead area" in the middle of the lot, allegedly because it was "virtually impossible" to remove all of the snow to the lower section of the parking lot using only snowplows.[6] Photographs introduced into evidence and shown to witnesses at trial show a pile of snow several inches high with discoloration at its base in a cross-hatched area, which [Ms. McKinney] and [Ms.] Billingsley testified was the black ice that [Ms. McKinney] slipped on. The photograph marked P-[1]6 shows "hatch marks between the two cars … where [Ms.] McKinney was sitting, or laying [*sic*], or on the ground." Looking at the photograph, the trial court stated that "[i]t does look like there's two, three inches of snow in the cross-hatch area."

---

[6] EIG concedes that its "snow[-]plow crews did not plow or shovel the small area located between the parking bumpers in the center of the subject parking lot[,]" noting that "the subject area was inaccessible by EIG's plows due to the placement of parking bumpers." EIG's Brief at 6, 7 (citations omitted). ***See also id.*** at 29 ("EIG did not plow, shovel, or otherwise remove the [6½] inches of snow that accumulated during the [snowstorm] from the non-crosshatched, non-parking space area, located between parking bumpers and poles, of the subject parking lot.") (citation and emphasis omitted).

*Id.* at 35-36 (internal citations omitted).

Ms. McKinney recognizes that:

Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons — strangers to the contract — will not be injured thereby. It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract....

*Id.* at 48 (quoting ***Farabaugh v. Pa. Tpk. Comm'n***, 911 A.2d 1264, 1283 (Pa. 2006) (emphasis omitted)). This principle is formalized in Section 324A of the Restatement (Second) of Torts, which states in relevant part that:

§ 324A Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm....

***Casselbury v. American Food Service***, 30 A.3d 510, 513 (Pa. Super. 2011) (quoting Restatement (Second) of Torts, § 324A). Ms. McKinney asserts that, pursuant to Section 324A(a), EIG owed her a duty "to perform its snow-removal activities in a non-negligent manner ... and it was for the jury to determine whether EIG breached that duty and whether any such breach caused [her] injuries." Ms. McKinney's Brief at 32.

Assuming *arguendo* that EIG breached its aforementioned contractual obligations by leaving some snow in the middle of the parking lot, Ms. McKinney points to nothing in the contract that obligated EIG to monitor and address the parking lot for possible snow melt and refreeze in the days following the snowstorm. That was SEPTA's responsibility and, as the trial court noted, EIG was not permitted to return to the parking lot to inspect conditions unless directed to do so by SEPTA. SEPTA did not request that EIG perform any services after March 16, 2017. Thus, it is clear that EIG had no duty to check the conditions of the lot on March 20, 2017, the day of Ms. McKinney's fall. **See Straw v. Fair**, 187 A.3d 966, 983 (Pa. Super. 2018) ("[I]t is a fundamental principle of tort law [that] there cannot be a valid claim sounding in negligence unless there is a duty upon the defendant in favor of the plaintiff which has been breached. The existence of a duty is a question of law for the court to decide.") (internal quotation marks and citations omitted; some brackets added). **See also Farabaugh**, 911 A.2d at 1283 ("It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of **the nature of the undertaking** in the contract….") (emphasis added).

Moreover, to the extent that EIG breached a specification in the contract — and a duty of care pursuant to Section 324A — by leaving some snow in the middle of the parking lot when it serviced the lot earlier in the week, the connection between that breach and Ms. McKinney's unfortunate fall are too

attenuated to hold EIG liable.[7] We have stated that "[p]roximate cause does not exist where a defendant's negligence was so remote that the defendant cannot be held legally responsible as a matter of law for the harm that resulted to the plaintiff." ***Kote v. Bank of New York Mellon***, 169 A.3d 1103, 111 (Pa. Super. 2017) (citation omitted). "To determine proximate cause, … the question is whether the defendant's conduct was a 'substantial factor' in producing the injury." ***Brown v. Philadelphia College of Osteopathic Medicine***, 760 A.2d 863, 869 (Pa. Super. 2000) (citations and some internal quotation marks omitted). Further, "[p]roximate cause is primarily a problem of law and it is a Pennsylvania court's responsibility to evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm when it appears to the court highly extraordinary that the actor's conduct should have brought about the harm." ***Id.*** at 868 (citation, internal quotation marks, and emphasis omitted). We have observed that "[i]t is not sufficient … that a

_____

[7] Indeed, the trial court recognized this issue at trial when ruling on EIG's motion for nonsuit, stating:

> [I]t's just so attenuated. What we are looking at is an injury that takes place four days after [EIG] completes [its] work, four days later when [EIG] do[es] not have the right to go back and do anything on that property. [It has] to be invited back by SEPTA. Four days when SEPTA has total control over the property[,] where the burden becomes SEPTA's to inspect the property, correct conditions, to do the things that SEPTA routinely does. Putting out salt, for example.

N.T. Trial, 3/13/20, at 16; ***see also*** Ms. McKinney's Brief at 52-60 (discussing the trial court's "attenuated" ruling); ***see also*** TCO at 3 ("To hold [EIG] liable for a slip[-]and[-]fall, that was apparently the fault of SEPTA, four days after [EIG] had completed [its] contractual duty to clear snow and ice would be a miscarriage of justice.").

negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury[,]" and have noted that "a finding of proximate cause turns upon[] whether the policy of the law will extend the responsibility for the [negligent] conduct to the consequences which have in fact occurred." *Id.* (citations omitted; some brackets added). "Thus, proximate cause must be determined by the judge and it must be established before the question of actual cause is put to the jury." *Id.* (citation and internal quotation marks omitted). To guide us on this issue, we look to Section 433 of the Restatement (Second) of Torts, which sets forth:

> § 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm
>
> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.

*Id.* at 869 (quoting Restatement (Second) of Torts, § 433).

Here, EIG's leaving some snow in the middle of the parking lot four days before Ms. McKinney's fall was not a 'substantial factor' in producing her harm; instead, SEPTA's apparent lack of monitoring and salting in the days following

- 11 -

the snowstorm played a far greater hand in causing her to fall. In comparison, any negligence by EIG in leaving some snow in the middle of the lot earlier in the week was so remote that EIG cannot be held legally responsible as a matter of law for the harm that resulted to Ms. McKinney. ***See Brown***, 760 A.2d at 869 (considering in its proximate-cause analysis that "it is abundantly clear that factors other than the negligence of [the defendant] had a far greater effect in producing the harm complained of by the [plaintiffs]") (footnote omitted). We decline to hold EIG responsible for SEPTA's failure to treat its parking lot in the aftermath of the snowstorm. Accordingly, we affirm the trial court's order denying Ms. McKinney's motion to remove the nonsuit.[8],[9]

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *7/7/2021*

---

[8] To the extent, if any, that we affirm on a basis different than the trial court, we note that "this Court may affirm a trial court's ruling on any basis." ***Zehner v. Zehner***, 195 A.3d 574, 581 n.12 (Pa. Super. 2018) (citation omitted).

[9] In light of our disposition, we need not address Ms. McKinney's remaining issue.