J-S15025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KIMBERLY PITTS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SONESTA INTERNATIONAL HOTELS | : | No. 2834 EDA 2025 |
| CORPORATION A/K/A SONESTA | : | |
| RITTENHOUSE A/K/A SONESTA | : | |
| RITTENHOUSE SQUARE, AND ROYAL | : | |
| SONESTA PHILADELPHIA, AND HPT | : | |
| IHG-3 PROPERTY TRUST, AND CENTER | : | |
| CITY HOTEL ASSOCIATES, AND JOHN | : | |
| DOE (1-5) | : | |

Appeal from the Judgment Entered August 19, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231002600

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED JUNE 23, 2026**

Kimberly Pitts (Appellant) appeals from the judgment entered against her, and in favor of Sonesta International Hotels Corporation a/k/a Sonesta Rittenhouse a/k/a Sonesta Rittenhouse Square, and Royal Sonesta Philadelphia, and HPT IHG-3 Property Trust, and Center City Hotel Associates (collectively, Sonesta), and John Doe (Doe) (all defendants referred to as the Defendants).   Appellant had filed the instant negligence action against Defendants, seeking damages for injuries she sustained after falling on a wet

_____

* Former Justice specially assigned to the Superior Court.

floor in the foyer/vestibule between Sonesta's hotel's lobby and an adjacent parking garage not owned by Sonesta. The judgment resulted from the trial court granting Defendants' motion for compulsory nonsuit, following Appellant's case-in-chief, during the bench trial. After careful consideration, we affirm.

The trial court summarized the facts underlying the instant appeal as follows:

> On or about November 7, 2021, [] Appellant was walking through the foyer [(foyer or vestibule)] of the Sonesta Hotel in Philadelphia, … when she allegedly slipped on the floor, causing injuries.
>
> At the time of the accident, Appellant had just finished her shift as an employee of Ruth's Chris Steakhouse. That business operated inside the Sonesta Hotel [(the hotel)]. Appellant walked from Ruth's Chris through the common lobby and out [of] the door of the foyer leading to the hotel's parking [garage]. Appellant claims she slipped and fell inside the hotel foyer because the foyer floor was wet.
>
> Among the evidence presented at trial was the hotel lobby video showing Leonard Wilson [(Wilson)], [the hotel's] maintenance technician, who is clearly seen inside the foyer mopping the floor prior to Appellant's fall.
>
> Per the video, the foyer at the time of the incident was well-lit[,] with large glass doors covering both the entrance from the hotel parking [garage] into the hotel foyer[,] and from the hotel lobby into the foyer on the other side.
>
> Specifically, that video (shown numerous times throughout the trial) showed Wilson placing two (2) yellow warning signs inside the foyer with him as he is mopping; one sign appeared to be placed near the front doors' entrance from the lobby into the foyer and one in front of the door leading from the foyer into the parking [garage,] respectively.

- 2 -

Trial Court Opinion, 11/24/25, at 2-3 (unpaginated).

On October 25, 2022, Appellant filed the instant negligence action against Defendants, to which Defendants filed an answer and new matter. The matter proceeded through discovery. On March 3, 2025, Defendants filed a motion for summary judgment, which the trial court denied on May 6, 2025.

A bench trial took place from July 14-17, 2025. At the close of Appellant's case-in-chief, Defendants moved for entry of a compulsory nonsuit, which the trial court granted. Order, 7/29/25. Appellant filed a motion to remove the nonsuit, which the trial court denied. On August 19, 2025, the trial court entered judgment in favor of Defendants, after which Appellant timely filed the instant appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the trial court, when considering []Appellant's motion to remove entry of nonsuit, committed an error of law by usurping the function of the factfinder and resolving disputed issues of material fact?

2. Whether the trial court, when considering []Appellant's motion to remove entry of nonsuit, committed an error of law by failing to resolve evidentiary conflicts or make inferences to the benefit of the non-moving party?

Appellant's Brief at 5.

We address Appellant's claims together, and review them under the following standard:

A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all

defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in [the appellant's] favor. The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.

The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law.

*Baird v. Smiley*, 169 A.3d 120, 124 (Pa. Super. 2017) (internal citations and quotation marks omitted).

Appellant first argues that in entering the compulsory nonsuit, the trial court improperly resolved factual issues against her, the non-moving party. Appellant's Brief at 33. Appellant claims she produced evidence establishing that (1) her injury was caused by a dangerous condition, (2) the condition was created by Defendants, who had notice of it, and (3) Defendants failed to exercise reasonable care to protect her, as an invitee. *Id.* at 33-34. Appellant states it is undisputed that "the vestibule floor was wet" before Appellant entered. *Id.* at 34. Appellant claims that Defendants further admitted, in their summary judgment motion and supporting bench memorandum, that Defendants' employee caused the floor to be wet, by mopping the floor "only a minute or two before Appellant's fall." *Id.* Appellant argues that these facts "evince [that Defendants] created a dangerous condition which [Appellant] could not reasonably expect to discover and which [Defendants] had actual

notice of." **Id.** According to Appellant, this evidence established a *prima facie* negligence cause of action against Defendants. **Id.** at 34-35.

Appellant acknowledges Defendants' argument that the wet floor was an open and obvious danger, and Defendants' placement of "wet floor" signs *de facto* satisfied any duty owed to Appellant. **Id.** at 35. Appellant claims that these arguments are belied by the facts. **Id.** Appellant points out that whether an "open and obvious danger" exists is a question of fact, which may only serve as grounds for a nonsuit where "reasonable minds could not differ as to the conclusion." **Id.** at 36.

Appellant also argues that the wet-floor danger was not known and obvious to her as a matter of law. **Id.** at 36-37. In support, Appellant relies on her own testimony that she had no knowledge of the dangerous condition before she fell. **Id.** at 37. According to Appellant, in the intervening period between her stepping into the vestibule and slipping on the floor, "it was impossible for her to perceive the danger, let alone make efforts to avoid it." **Id.** at 37-38. Appellant also relies on her testimony that for two years prior to her fall, she routinely walked through the vestibule and had never observed anyone mop the lobby or vestibule area during her shift. **Id.** at 37. Appellant contends that this evidence favors a finding that the danger was not known or obvious to Appellant. **Id.**

Appellant argues that the trial court improperly usurped the role of the factfinder. **Id.** at 21. Appellant claims that, "the question of whether a danger

was known or obvious is usually a question of fact for the jury[.]" *Id.* at 21-22 (quoting *Carrender v. Fitterer*, 469 A.2d 120, 124 (Pa. 1983)). Appellant also asserts that the issue of whether Defendants exhibited reasonable care should be resolved by the factfinder.[1] *Id.* at 22.

Appellant cites *Shipton v. Comfort Suites Scranton*, 260 A.3d 162, 1150 MDA 2020 (Pa. Super. filed Jul. 23, 2021) (unpublished memorandum),[2] as persuasive, arguing that

> [t]here are[] cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases[,] the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection….

Appellant's Brief at 32 (quoting *Shipton*, 150 MDA 2020 (unpublished memorandum at 3 (citation omitted)).

Appellant further argues the adequacy of the wet-floor signs as a warning is a question of fact for the factfinder. *Id.* at 38-39. Appellant argues the evidence does not support a conclusive finding that the danger was obvious, and asserts that reasonable minds could differ on this issue. *Id.* at 39.

_____

[1] According to Appellant, the trial court earlier denied Defendants' motion for summary judgment, which was predicated on the same arguments advanced in the motion for compulsory nonsuit. *Id.* at 22.

[2] *See* Pa.R.A.P. 126(b) (stating that unpublished memorandum decisions filed after May 1, 2019, maybe cited for their persuasive value).

According to Appellant, the record established that she did not see the dangerous condition before she slipped and fell:

[t]he wet floor was located squarely inside of the [hotel] vestibule, and [Appellant] testified that as she travelled through the lobby on her way into the vestibule, the doors which separated the lobby from the vestibule obscured her view of the danger within. A factfinder could more than reasonably conclude that this evidence establishes the essential elements of [Appellant's] cause of action ….

*Id.* at 43.

Appellant disputes the trial court's reliance on ***Clayton v. United States***, No. CV 15-1340, 2016 WL 336712 (E.D. Pa. Jan. 28, 2016), a case decided under the Federal Tort Claims Act. Appellant's Brief at 45. Appellant points out that in ***Clayton***, a wet-floor warning sign purportedly caused the plaintiff's fall, whereas in this case, a wet floor caused Appellant's fall. ***Id.***

Appellant directs our attention to this Court's decision in ***Downs v. Cammarano***, 218 A.2d 604 (Pa. Super. 1966). Appellant's Brief at 42. In ***Downs***, the plaintiff sustained injuries after slipping and falling on icy stairs. ***Id.*** According to Appellant, the plaintiff in ***Downs*** was aware of the dangerous condition, as he had previously used the same stairs. ***Id.*** This Court reversed the entry of a nonsuit, reasoning that "sufficient evidence to justify the submission of this case to the jury on the question of defendants' negligence." ***Id.*** (quoting ***Downs***, 218 A.2d at 605).

In her second issue, Appellant argues that Defendants' purported exercise of reasonable care is not a basis for granting nonsuit. ***Id.*** at 47.

Appellant claims that the trial court failed to apply the Restatement (Second)

of Torts, Section 343, cmts. d and e.[3]  *Id.* at 48-49.  Appellant asserts the

_____

[3] Comments d and e provide as follows:

> *d. What invitee entitled to expect*.  An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair **or to give warning of the actual condition and the risk involved therein**.  Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering.  This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor.

> *e.  Preparation required for invitee*.  In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance.  One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors.  On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors.  So too, one who goes on business to the executive offices in a factory, is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety.  If, however, on some particular occasion, he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory.

Restatement (Second) of Torts § 343 cmts. d, e (emphasis added).

trial court "relied solely on its own judgment over the weight of the evidence, while reverse-engineering a standard supported by what it deemed to be 'unreasonable[.]'" *Id.* at 49. Appellant contends the determination of reasonableness of the warning should be left to the factfinder. *Id.* at 50-51.

Defendants disagree, arguing that "whether a danger is 'known' is assessed subjectively, while whether a danger is 'obvious' is assessed objectively based on a reasonable person standard." Appellees' Brief at 20 (citing *Berman v. Radnor Rolls, Inc.*, 542 A.2d 525, 531-32 (Pa. Super. 1988) (stating that a plaintiff's *prima facie* case requires proof of duty that involves an objective and subjective standard)). Defendants argue that

> [t]o survive a nonsuit, the trial record[,] at the conclusion of [Appellant's] case-in-chief[,] had to be such that a reasonable trier of fact could find that: (1) [Appellant] did not have a subjective knowledge of Defendants' warning and an appreciation that it conveyed the possibility of harm; and (2) despite the warning provided, the wet floor would not have been apparent to a reasonable person behaving reasonably.

*Id.* at 20-21. According to Defendants, Appellant wrongly suggests that these issues invariably are jury questions. *Id.* at 21.

Defendants argue that this case is similar to the circumstances in *Carrender*.[4] *Id.* at 22. According to Defendants, the Supreme Court in *Carrender* reasoned that

_____

[4] In *Carrender*, the plaintiff slipped on a patch of ice next to her car after leaving an appointment. *Carrender*, 469 A.2d at 122. Significantly, the plaintiff knew the patch of ice was there, but chose to park her car in that
*(Footnote Continued Next Page)*

"[the plaintiff's] own testimony showed not only that the existence of the ice was obvious to a reasonably attentive invitee, but also that [the plaintiff] herself was aware of the ice and appreciated the risk of traversing it." [*Carrender*, 469 A.2d] at 124. As the plaintiff's testimony was "uncontradicted" on these points, the Supreme Court held that the plaintiff failed to establish a duty as a matter of law and that it was error to submit these issues to a jury. *Id.*

Appellees' Brief at 21-22.

Defendants acknowledge Appellant's testimony, on direct examination, that she did not see a wet-floor sign as she approached the door to the vestibule. *Id.* at 23. However, Defendants point out Appellant's subsequent uncontradicted admission that, after opening the metal door to the vestibule area, she had an unobstructed view of the yellow "wet floor" sign. *Id.* at 22 (citing N.T., 7/16/25, at 41). Defendants assert that Appellant fell only *after* she saw the warning sign. *Id.* According to Defendants,

the trial court did not abuse its discretion or commit an error of law by taking [Appellant] at her word, corroborated by the video evidence that prompted [Appellant] to make these concessions, in the absence of any contradictory testimony from another witness.

*Id.* at 23. Defendants further emphasize Appellant's own testimony that a yellow warning sign signified a potential hazard in the area. *Id.* at 24 (citing N.T., 7/16/25, at 15).

_____

spot, despite the fact there were other spaces in the parking lot free of ice. *Id.*

- 10 -

Defendants also disagree with Appellant's reliance on this Court's unpublished memorandum in **Shipton**. In **Shipton**, this Court recognized that a landowner may be liable for harm caused by a known or obvious hazard if "the possessor should anticipate the harm despite such knowledge or obviousness." **Shipton**, 1150 MDA 2020 (unpublished memorandum at 3). In that case, the plaintiff presented evidence of prior, repeated falls on the same type of hazard.[5] **Id.** (unpublished memorandum at 4-5). According to Defendants, Appellant presented no evidence of similar past incidents involving the wet foyer floor. Appellees' Brief at 25.

Defendants dispute Appellant's reliance on this Court's decision in **Downs**. Appellees' Brief at 26. In **Downs**, an invitee delivering dry cleaning fell on stairs that he knew to be very icy. **Downs**, 218 A.2d at 605. In discussing the issue of contributory negligence, this Court recognized that the delivery person could not have avoided this harm, no matter the caution he exercised. **Id.** at 606. Defendants quote this Court's statement that, "[t]he

---

[5] The Court in **Shipton** stated,

> [v]iewed in the light most favorable to the [a]ppellant, a jury could reasonably conclude from the above evidence that Appellee Hotel had actual knowledge of the issue and, therefore, it should have anticipated that it would cause harm to [a]ppellant. Thus, a question of fact exists regarding Appellee Hotel's potential duty to [a]ppellant under Section 343A. As a result, the trial court erred by granting summary judgment in Appellee Hotel's favor.

**Shipton**, 1150 MDA 2020 (unpublished memorandum at 5).

only thing [the plaintiff] did not do was hold [o]nto an ice covered railing which[,] in his judgment[,] might have increased his hazard. We cannot say with certainty whether its use would have been helpful or not." Appellees' Brief at 26 (quoting ***Downs***, 218 A.2d at 605). Defendants assert that the instant circumstances present the "rare case" that supports a nonsuit based on a plaintiff's own subjective knowledge. ***Id.*** at 27.

Defendants claim that even if a warning was required, the landowner's only duty is to "use reasonable care to warn the visitor." ***Id.*** at 28 (quoting Restatement (Second) of Torts § 343, cmt. d). Defendants posit that because there can be no duty where the dangerous condition is obvious, there can be no breach of duty where there is an obvious warning. ***Id.***

Defendants direct our attention to Appellant's testimony acknowledging that a yellow caution sign indicates that individuals are to exercise caution. ***Id.*** at 30. Defendants argue that

> [w]hether or not [Appellant] actually saw one of the two yellow warning signs (as she affirmatively admitted when confronted with video evidence), [Appellant] conceded that any person walking through the lobby would have an unobstructed view of the yellow warning sign *after* the door was open….

***Id.*** (emphasis in original).

We observe that to establish a viable cause of action for negligence, a plaintiff must demonstrate the following four elements:

> (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*,

a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

***Shellenberger v. Kreider Farms***, 288 A.3d 898, 906 (Pa. Super. 2023) (citation omitted).

"The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff's injury." ***Toro v. Fitness Int'l LLC***, 150 A.3d 968, 977 (Pa. Super. 2016) (citation and brackets omitted). Instantly, Appellant claimed to be a business invitee[6] at the time of the incident. Thus, the following principles are applicable.

The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care.

***Emge v. Hogosky***, 712 A.2d 315, 317 (Pa. Super. 1998) (citation omitted).

In determining the scope of duty property owners owe to business invitees, we have relied on Restatement (Second) of Torts § 343, which provides as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:

(a) knows or by the exercise of reasonable care would discover

_____

[6] "A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land." ***Walker v. Drexel Univ.***, 971 A.2d 521, 524, n.1 (Pa. Super. 2009) (citation omitted).

the condition, and should realize that it involves an unreasonable risk to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *accord Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa. Super. 2001). Comment f to Section 343 provides that

[t]his duty may require [the possessor] to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to a visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or forget what he has discovered or failed to protect himself against it.

Restatement (Second) of Torts § 343, cmt. f. The particular duty owed to a business invitee must be determined on a case-by-case basis. *See Campbell v. Eitak, Inc.*, 893 A.2d 749, 751 (Pa. Super. 2006) (concluding that the classification of plaintiff as business invitee did not, by itself, establish the particular duty owed by the restaurant, based on circumstances of the case).

Thus, to establish negligence, the business invitee must demonstrate that the proprietor deviated from its duty of reasonable care owed under the circumstances. *Neve*, 771 A.2d at 791. "Under Pennsylvania law, [t]he mere fact that an accident occurred does not give rise to an inference that the

injured person was the victim of negligence." ***Toro***, 150 A.3d at 976 (citation and internal quotation marks omitted); ***see also Neve***, 771 A.2d at 790 ("Neither the mere existence of a harmful condition in a [business,] nor the mere happening of an accident due to such a condition[,] evidences a breach of the proprietor's duty of care or raises a presumption of negligence." (citing ***Zito v. Merit Outlet Stores***, 647 A.2d 573, 575 (Pa. Super. 1994)).

"The business visitor enters landowner's premises with implied assurance of preparation and reasonable care for his protection and safety while he is there[.]" ***Treadway v. Ebert Motor Co.***, 436 A.2d 994, 999 (Pa. Super. 1982). No liability exists when the dangerous condition is known or obvious to the invitee, unless the proprietor should anticipate the harm despite such knowledge. Restatement (Second) of Torts § 343A(1).

> The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

***Id.*** § 343A, cmt. b.

> If [the invitee] knows the actual conditions, and the activities carried on, and the dangers involved in either, [s]he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify h[er] in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that [the invitee] will protect [her]self by the exercise of ordinary care, or that [s]he will voluntarily assume the risk of harm if [s]he does not succeed in doing so. Reasonable

care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to [her] that [s]he may be expected to discover them.

*Id.* § 343A, cmt. e.

As our Supreme Court has explained,

[a] danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement, *supra*, § 343A [cmt.] b. For a danger to be "known," it must "not only be known to exist, but … also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* **Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion.** *See* Restatement, *supra*, § 328B comments c and d.

*Brown v. City of Oil City*, 294 A.3d 413, 440 (Pa. 2023) (emphasis added).

With this in mind, we review the evidence presented at trial, in a light most favorable to Appellant. *See Baird*, 169 A.3d at 124.

At trial, Appellant presented the deposition testimony of Wilson, Defendants' lobby attendant.[7] N.T., 7/14/25, at 58. As read into the record, Wilson testified as follows:

**Question** [Appellant's counsel]: Now, when you would mop inside the vestibule, only the vestibule area, would you ever put a wet-floor sign out on the floor for the lobby[?]

_____

[7] Wilson was unavailable for trial, as he was hospitalized. N.T., 7/14/25, at 57.

- 16 -

**Answer** [Wilson]:  Yes, absolutely.  Because … if they come in from that area and then step on the floor, it's still a little wet, it would be on their shoes. … [W]e consider it for safety reasons.

….

**Question:** … [W]hen you were mopping in the vestibule area[,] … would you ever put a wet-floor sign on the floor in the lobby area in front of those doors?

**Answer:** I think I did, yes.  Usually, we used to have a rug there.  There used to be a rug there in front of that door, too.

**Question:** Regardless of whether or not there was a rug, would you still put a wet-floor sign there?

**Answer:**  Yes, I'm pretty sure.  I can't remember.

*Id.* at 58-60.  Wilson identified the placement of the wet-floor sign from a photograph of the vestibule area at the time of the accident.  *Id.* at 65, Exh. D-1; Sonesta-11.  Wilson testified the wet-floor sign was placed in the middle of the vestibule area.  *Id.* at 65-66.  According to Wilson, in his four years working at Sonesta, this is the first fall in the vestibule area that he can recall. *Id.* at 68.

Appellant also presented the deposition testimony of Donelle Hemphill (Hemphill), a security officer present at the hotel on the date of the accident. Hemphill testified that she has been present when attendants mopped the vestibule area.  *Id.* at 72.  Hemphill explained that

[n]ormally, there would be one [sign] in front of the carpet where the door is to lead out to the parking garage.  Then there's normally one inside the parking garage where they would pay for their ticket—at or within that area so you can see that sign is there that says it's wet.

*Id.* In Hemphill's two years of working at the hotel, she could not recall anyone falling in the hotel's lobby. *Id.* at 74.

The hotel's general manager, Robert Cosgrove (Cosgrove), testified as on cross-examination. *Id.* at 99. Cosgrove testified that he was notified of Appellant's accident the following morning. *Id.* at 102. Cosgrove explained that at the time of the accident, a wet-floor sign would not be placed in the lobby because Wilson was "not mopping the lobby. He's mopping the valet area[.] … [Y]ou put the wet-floor sign in the area you're mopping." *Id.* at 115. Cosgrove explained that the hotel would not place a sign in the lobby, as it would block the door to the vestibule. *Id.* at 116. When asked whether a sign could be placed in the lobby, to the side of the vestibule doors, Cosgrove responded,

> [n]o, because then that doesn't indicate the area that is wet. … [E]veryone is instructed that the area that is actually wet is the area in which the sign goes to. Anything else is not a clear indication of a wet floor.

*Id.* (punctuation modified).

Cosgrove confirmed that Sonesta's standard operating procedure required the wet-floor sign to be placed "on the area that was wet." *Id.* at 118. Although the standard procedure required the floor to be mopped between 12:30 and 1:30 a.m., Cosgrove stated it could be mopped earlier:

> That is the minimum requirement. If [the floor] requires it prior to, which it continually required it due to the amount of traffic that that area takes on, they would mop it when they deemed it – to make sure that it is clean and clear.

*Id.* at 118-19. Cosgrove admitted that he previously observed a wet-floor sign being placed in the lobby near the vestibule doors. *Id.* at 151. However, Cosgrove explained that the sign was placed in the lobby "because the lobby was being cleaned[.]" *Id.*

Cosgrove testified that employees were not required to give guests a verbal warning about a recently mopped area:

> It just wasn't something that we thought [] was necessary[,] given the fact that we were giving notice to individuals by the way that we set up the area and put out the wet[-]floor signs.

*Id.* at 135.

Upon being shown a video of the accident, Cosgrove stated he observed Wilson place two wet-floor signs in the vestibule. *Id.* at 136. Cosgrove recalled no other slip-and-fall incidents during his employment at the hotel. *Id.* at 135.

Appellant testified that she fell on November 7, 2021. *Id.* at 155. Appellant stated that as she walked through the lobby, approaching the vestibule doors, she did not see a wet-floor sign.[8] *Id.* at 157. At the time she fell, Appellant claimed that the floor "was saturated. It was like a puddle." *Id.* at 156.

_____

[8] Appellant stated that during COVID, the doors to Ruth's Chris were locked during the day, so "we would have to go through the Sonesta and enter." *Id.* at 159. Ruth's Chris employees would exit at night through the hotel, because Ruth's Chris "couldn't open the doors after closing." *Id.*

Appellant stated that from July 2020 through November 7, 2021, she never observed a person mopping the lobby or vestibule floor. *Id.* at 161-62. Appellant stated that prior to her fall, she did not see a wet-floor sign, or any indication that the vestibule floor was wet. *Id.* at 163. Appellant testified that after pushing the vestibule door forward, she took "[a] few" steps before falling. *Id.* at 164. According to Appellant, "by the time I had seen [the sign], I was on my way down. My legs were in the air. It was too late." *Id.* Appellant stated she was not all the way through the door before she fell. *Id.*

On cross-examination, Appellant acknowledged that at Ruth's Chris, if there was a spill, employees would place a yellow wet-floor sign at the location of the spill. N.T., 7/16/25, at 15. Appellant, viewing the video of the accident, testified that she could see Wilson carrying two wet-floor signs into the vestibule. *Id.* at 24.

Appellant described the vestibule doors as having three horizontal metal bars, covering at least half of the door, with the remainder of the door being glass. *Id.* at 36-37, 158. Appellant testified that the metal frame and handle of the vestibule doors blocked her view of the wet-floor sign. *Id.* at 38. According to Appellant, as she approached the door, "[t]he handle of the door to push forward and the frame of the door is about a foot wide, and it is right in front of my view." *Id.*

However, Appellant also testified that, at the time of the accident, she opened the vestibule door, "took two steps in, and had no control over my

- 20 -

body[,]" and fell. *Id.* at 31. Appellant confirmed that **upon opening the door, she had an unobstructed view of the wet-floor sign**. *Id.* at 38-39. While viewing the video of her opening the vestibule door, Appellant further testified as follows:

> [Defendants' counsel:] You'd agree with me at this point that the frame of the door is no longer blocking your view of the yellow "caution" sign; correct?
>
> [Appellant:] Yes.
>
> Q. You're looking straight forward?
>
> A. Yes.
>
> Q. And you'd agree with me at this juncture, you have an unobstructed view of the yellow caution sign; correct?
>
> A. Yes.
>
> ….
>
> Q. So based on that video, you take two steps in with an unobstructed view of the yellow caution sign before you fall; fair?
>
> A. About a step and a half before I lost my control.

N.T., 7/16/25, at 38-39. Appellant conceded she had control of her body when she took her first step into the vestibule. *Id.* at 41. Appellant further acknowledged that she fell during her second step into the vestibule. *Id.*

In ruling on Defendants' motion for compulsory nonsuit, the trial court stated the following:

> If[,] in fact[,] the court considers [Appellant] a business invitee, the duty of [Defendants] is, one, to know or by exercise of reasonable care would discover the condition. In this case, it was the mopped floor in the foyer …. [Defendants] should realize that

it involved an unreasonable risk of harm to such invitee and should expect they will not discover or realize the danger or fail to protect themselves against it, and fail to exercise reasonable care to protect them against the danger.

The court, as well as other parties in this case, has seen the video … [which is] clearly long enough to see exactly what happened prior to this slip and fall.

….

Now the video shows a vantage point of the hotel lobby in the front door at a 90-degree angle from the camera. The court can't tell how much and there was no testimony about how far away from the camera was the front door. But clearly, the court can presume it was a certain amount of feet.

However, even from the court's vantage point and from the vantage point of the video …, it was clear that prior to [Appellant] walking in and walking on the floor, the individual who was mopping the floor had placed not one but two yellow wet[-]floor signs in the vestibule area.

And the vestibule area … wasn't that big. … [T]he court notes that the front door from the area from the parking garage into the vestibule and from the vestibule into the hotel lobby was framed by four glass sections; two of which were the front doors that open out, two doors.

On both sides of the front doors, there was glass, clear glass going from the floor to the ceiling. ….

… Clearly, from the facts presented just by [Appellant], [Defendants were] not negligent. The individual has a right to mop.

….

[Appellant's] argument that … the signs were misplaced where [she] could not see, … even if the court considers and says that she couldn't see, believes she couldn't see before she walked into here, the video shows [Appellant] clearly opening the door and taking a least a step and a half.

N.T., 7/17/25, at 4-8 (capitalization modified).  Regarding Appellant's claim

that the door framing blocked her view of the signs, the trial court stated,

> [t]he court doesn't consider that significant because, clearly, the glass on both sides of the door was clear.  There's nothing preventing their view….

*Id.* at 13 (capitalization modified).

In its opinion, the trial court addressed Appellant's claim as follows:

> Appellant presented no evidence to show [that Defendants were] liable for Appellant's fall.  Specifically, by clearly placing the yellow "Wet[-]Floor" signs inside of the hotel foyer, [Defendants] adequately warned [] Appellant about the possibility of the foyer floor being slippery.  The foyer was well lit, as the video showed.
>
> More importantly, Appellant acknowledged the presence of the signs inside of the foyer before she walked inside.  N.T., 7/16/25, [at] 23 …, 24-25….
>
> The parties agreed that the video played at trial showed the events leading up to and including Appellant's fall.
>
> **Appellant, on cross-examination, agreed that she saw at least one of the yellow signs before entering the foyer prior to her fall.**  N.T., 7/16/25, [at] 38-40.
>
> There was no evidence presented at trial showing the lighting in the foyer to be faulty, dim or less than adequate prior to or during [] Appellant's fall.  In addition, there was no testimony showing the foyer to have any hidden areas or spaces[,] or [that the wet-floor sign was] blocked from a person's view.
>
> On the contrary, the video played at trial showed Sonesta's maintenance technician[, Wilson], placing two yellow warning signs inside the well-lit hotel foyer prior to and during his mopping of the foyer.
>
> Appellant testified that the hotel lobby floor near the foyer doors was dry.

- 23 -

The trial court considered all the evidence favorable to [] Appellant (presented by both parties)[,] as well as all reasonable inferences favorable to [] Appellant presented during [] Appellant's case-in-chief before ruling on [Defendants'] motion for nonsuit. In doing so, the trial court found that [] Appellant failed to meet her burden to show that [Defendants were] liable for her fall.

….

In the instant case, there was a video of the lobby prior to and during the incident, and Appellant acknowledged the [wet-floor] signs were placed inside the hotel foyer before she entered. The fact that Appellant somehow did not see the signs or failed to appreciate the danger posed by the wet foyer floor did not negate the fact that [] Defendant[s] clearly set up the signs inside of the well-lit lobby before Appellant entered.

In doing so, Defendant[s] adequately warned Appellant and others about the wet floor inside the hotel foyer.

Trial Court Opinion, 11/24/25, at 4-7 (paragraph breaks modified; emphasis added). We discern no error or abuse of the trial court's discretion.

Contrary to Appellant's argument, *Downs* offers no support for overturning the trial court's entry of compulsory nonsuit. In *Downs*, the plaintiff fell down stairs while delivering dry cleaning to the defendant's residence. *Downs*, 218 A.2d at 605. As described by this Court,

[the] plaintiff had ascended the steps a few minutes before the accident for the purpose of making a delivery of dry cleaning to the defendants, which had been accomplished. The steps were described as being very icy with hills and ridges on them making travel over them very difficult. In ascending the steps encumbered with the cleaning[,] plaintiff proceeded by placing one foot on each step and bringing the other foot up to the same step before attempting to advance to the next step. There was a railing along one side of the steps but it was not used by plaintiff because it was also ice covered. In descending the steps he used

- 24 -

the same procedure and proceeded in a sidewise manner, but again declined to use the railing because it was ice covered. In descending he stepped off the top step onto the center of the one below and was about to bring his other foot down to the same level when his feet shot from under him. He then reached out for the railing but did not get it in time to save him from falling.

*Id.*

This Court ultimately concluded there was sufficient evidence to submit the issue of contributory negligence to a jury:

The fact that the plaintiff successfully ascended the steps with his cleaning and without the use of the handrail indicates that there is some room for reasonable minds to differ on the question whether this was a forbidden area in which an accident would appear inevitable by its use.

In descending the steps [the] plaintiff was bound to remember their condition as observed and experienced on his ascent, and he was under the ever present duty to look where he was going and to avoid danger by the use of his senses and the means at hand. In performing his duty to safeguard himself from an accident[,] he looked and took the same precaution as he had taken in ascending. He descended sidewise, intending to place both feet on each step before attempting to descend to the next one. He was using the center of the steps where, it may be reasonably presumed, he had successfully ascended. The only thing he did not do was to hold onto an ice covered railing which[,] in his judgment[,] might have increased his hazard. We cannot say with certainty whether its use would have been helpful or not. Therefore, it was for the determination of the jury.

*Id.* at 606.

Here, by contrast, Defendants placed **two** warning signs in the wet foyer. Our review of the video evidence, presented at trial, confirms that a wet-floor sign was visible from the lobby through the clear glass doors and surrounding windows. Appellant herself admitted to seeing the wet-floor sign

**before** taking her second step into the foyer, *i.e.*, the step during which she fell. "[I]f there is anything settled in the law of negligence in Pennsylvania, it is the duty of a person to look where he is walking and see that which is obvious." **Villano v. Security Sav. Ass'n**, 407 A.2d 440, 441 (Pa. Super. 1979) (citation omitted).

Finally, there is no evidence Defendants had knowledge that their two wet-floor signs were inadequate to warn business invitees of the danger of a slippery floor. Defendants' witnesses could recall no prior slip-and-fall accidents occurring in the vestibule. Appellant presented no evidence of any prior accidents occurring despite the presence of the signs. Where, as here, Appellant presented no evidence that Defendants breached their duty to Appellant, we discern no error in the trial court's conclusion that, as a matter of law, Appellant failed to assert a *prima facie* negligence case against Defendants.

Consequently, we affirm the trial court's entry of compulsory nonsuit against Appellant.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2026

- 26 -